UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FLOYD SHROPSHIRE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CHENIERE ENERGY, INC. and MIDSHIP PIPELINE CO., LLC.<br><br>*Defendant*. | Civil Action No. 4:20-cv-01175<br><br>Judge Alfred H. Bennett |

### CLEVELAND INTEGRITY SERVICE'S MOTION TO INTERVENE AND SUPPORTING BRIEF

Floyd Shropshire ("Shropshire") has sued Cheniere Energy, Inc. and Midship Pipeline Co., LLC (collectively "Midship") for overtime under the Fair Labor Standards Act ("FLSA"). Shropshire, however, was employed by and paid by Cleveland Integrity Services, Inc. ("CIS"). So too were Winfrey Garrett ("Garrett"), Matthew Brister ("Brister"), and Danny Day ("Day"), who each have filed a consent to join Shropshire's lawsuit pursuant to 29 U.S.C. § 216(b).

As the employer of Shropshire, Brister, Garrett, and Day, CIS determined the central issues in their asserted claim for overtime under the FLSA: their pay and their duties. Plus, each has executed an arbitration agreement as a condition of their employment that precludes their participation in this lawsuit.

Pursuant to Federal Rule of Civil Procedure 24, CIS moves to intervene. Its status as their employer and its arbitration agreement encompassing their FLSA claims justifies both intervention as of right and as a matter of permission.

1

I.      FACTUAL BACKGROUND

   A.      ClS's Relationship with Midship

CIS provides third-party inspection services for its customers and thus sends its inspectors to their projects. (Declaration of Michael Frye (filed as Dkt. 13-1) at ¶ 3.)  This is comparable to a CPA firm sending auditors to its clients.  In both instances, there is a compelling logic for having truly independent inspections done.

> Pipeline inspectors, like auditors, are hired to work independently, just like auditors:
>
> The Inspector acts as the Owner Company's authorized representative for non-financial matters, continuously observes the Contractor's progress and monitors all activities in their assigned areas in accordance with codes and standards; regulatory requirements; Owner Company safety and environmental requirements, drawings, plans, and specifications; as well as the terms of the construction contract or agreement. The Inspector may also be asked to assist other specialized Inspectors (e.g., Welding Inspector), as directed.

CEPA Foundation and the INGAA Foundation, A Practical Guide for Pipeline Instruction Inspectors 11 (Mar. 2016), https://www.cepa.com/wp-content/uploads/2016/11/A-Practical-Guide-for-Pipeline-Construction-Inspectors-16Mar2016-FIN...1.pdf.    And, because this inspection work requires specialized personnel for only the duration of the project, these assignments are for a finite period.

Midship is one of CIS's customers. (Frye Declaration at ¶ 4.)  CIS controlled and directed its employees to provide the inspection services that Midship requested. (Frye Declaration at ¶ 5.) Midship paid CIS an all-inclusive rate to compensate it for the services it provided; that rate covered CIS's overhead, equipment, material, salary, benefits, vehicle allowance and applicable taxes and withholdings under state and federal law. (Midship Declaration at ¶ 6.)  From that amount, CIS, in its sole discretion, determined how much to pay each of its inspectors. (Midship Declaration at ¶ 6.)

### B. CIS Employment of Shropshire, Brister, Garrett, and Day

CIS employed Shropshire as a Welding Inspector and assigned him to provide inspection services on its behalf to different CIS customers. (Frye Declaration at ¶ 7.) One of those customers was Midship, to which Shropshire was assigned to from August 27, 2019 to January 18, 2020. (Frye Declaration at ¶ 17.) CIS also employed Brister and assigned him to its team providing inspection services to the Midship Pipeline Project from October 21, 2019 until January 3, 2020. (Frye Declaration at ¶¶ 37, 43.) It did the same with Garrett, assigning him to its Midship team from March 27, 2019 until September 11, 2019, and Day, assigning him to its Midship team from July 1, 2019 until February 14, 2020. (Frye Declaration at ¶¶ 19, 25, 27, 34.)

As their employer, CIS individually determined Shropshire's, Brister's, Garrett's, and Day's pay. (Frye Declaration at ¶¶ 15, 23, 32, 41.) CIS paid them a "guaranteed minimum salary equal to four times the daily salary amount" based on FLSA regulations. (Frye Declaration at ¶¶ 15, 18, 23, 26, 32, 35, 41, 44.); *see* 29 C.F.R. § 541.604(b). CIS also determined that their pay and duties qualified them as overtime exempt administrative employees under the FLSA. (Frye Declaration at ¶ 15, 24, 33, 42.); *see also* 29 U.S.C. § 213.

While employed by CIS, each agreed to be subject to CIS's policies and procedures governing its employees. (*See* Frye Declaration at ¶¶ 11, 21, 29, 39.) In fact, each signed or filled out at least *twelve* separate documents identifying him as an employee of CIS. (*See* Frye Declaration at ¶ 12, 22, 30, 40.) These included Internal Revenue Service ("IRS") W-4 Tax Forms. (Frye Declaration, Exs. A16, B18, C19, D13.) Further, Shropshire and Day affirmed their understanding that CIS was their employer by naming CIS as such when seeking unemployment benefits following the conclusion of their employment with CIS. (Frye Declaration at ¶¶ 13, 14, 31.)

Significantly, Shropshire, Brister, Garrett, and Day also executed an arbitration agreement as a condition of their employment with CIS. (Frye Declaration at ¶¶ 10, 20, 28, 38.) Under that arbitration agreement, each committed to "arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company." (Frye Declaration, Exs. A2, B2, C2, D2 at ¶ 2.) Each also agreed that "there shall be no class actions, collective actions, or multiple-employee claims of any kind." (Frye Declaration, Exs. A2, B2, C2, D2 at ¶ 2.)

## II. ARGUMENT

Shropshire's lawsuit alleges that he and others similarly situated was denied overtime pay. The central issue of in this case, accordingly, is whether Shropshire and those he seeks to represent were overtime exempt under the FLSA. But, rather than demanding arbitration with the entity that hired him, that determined he was overtime exempt, and that paid him (CIS), Shropshire sues *only* its customer (Midship). Because CIS was the actual employer, its employees (Shropshire, Garrett, Brister, and Day) can only hold Midship liable by showing that Midship *also* employed them as a joint employer with CIS. Absent joint employment, there is no claim against Midship. *See, e.g.*, *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2020 WL 1862578 (D. Kan. April 14, 2020) (dismissing FLSA claim by individual who was hired and paid only by staffing company, not the staffing companies customer she sued).

CIS's status as the actual employer (and potential joint employer with Midship) provides a sufficient interest to intervene. CIS has an interest in enforcing their commitment to arbitrate their FLSA claims as well as an interest in defending against their claim challenging its decision to classify them as overtime exempt under the FLSA. Permitting this lawsuit to go forward without CIS's participation would deprive CIS of these interests.

Therefore, CIS moves to intervene under to Rule 24(a) and 24(b). Pursuant to Federal Rule of Civil Procedure 24(c), CIS attaches as Exhibit 1 a motion to compel arbitration, seeking to

4

enforce Shropshire's, Brister's, Garrett's, and Day's commitment to arbitrate their employment claims. *See, e.g., U.S. ex rel. Frank M Sheesley Co. v. St. Paul Fire and Marine Ins. Co.*, 239 F.R.D. 404, 414 (W.D. Pa. 2006) (motion to compel arbitration satisfies Rule 24(c)). CIS will file a motion to compel arbitration upon the Court's approval of its intervention.

### A. Rule 24(a)(2): Intervention As Of Right

CIS's intervention is warranted. In fact, four other courts addressing the exact same scenario as here (FLSA suits against customers brought by Shropshire's counsel) have granted intervention to the actual employer. *Robertson v. Enbridge (U.S.) Inc.*, No. 2:19-cv-01080-WSS-LPL, 2020 WL 2105064 (W.D. Pa. Apr. 13, 2020), *report and recommendation adopted* 2020 WL 2104911 (W.D. Pa. May 1, 2020) is illustrative.

There too, the plaintiff (represented by Shropshire's attorneys) took the same tactic: bringing an FLSA lawsuit against a customer of CIS. The district court there rightly granted CIS's motion to intervene:

> They hired the subject employees, they determined how much to pay them, and they determined that they were exempt from overtime pay. They provided the employees to the named Defendant. The potential Intervenors appear at this stage to fit at least three out of the four relevant factors of being qualified as joint employers with Enbridge under the Third Circuit's definition. Regardless of the indemnity issue, which the Court finds does not have to be proven at this time, they stated a sufficient interest in the litigation. In addition, these potential employees, and others who may opt in later, have either agreed to a forum selection clause or arbitration agreement, both of which are being circumvented given that a joint employer of theirs was not named.

*Id.* at *3.

Similarly, *Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 30 (D. Wyo. Mar. 3, 2020) (attached as Ex. 2), *Ferrell v. SemGroup,* No. 4:19-cv-00610-GKF-JFJ, Dkt. 63 (N.D. Okla. June 12, 2020) (attached as Ex. 3), and *Altenhofen v. Southern Star Cent. Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947 (W.D. Ky. June 30, 2020) confronted

the same exact issue: an FLSA lawsuit brought (again by Shropshire's counsel) not against the pipeline inspection services company that was the actual employer, but rather against that company's customer.

Those courts also granted the pipeline inspection services company's intervention:

- "[t]he Court finds the potential for Silver Creek [customer] to claim Applied [pipeline inspection services company] is Plaintiff's sole employer, or even a joint employer, establishes a protectable interest." *Snow,* Ex. 2, at 6.

- "[t]he court concludes that TIR's [pipeline inspection services company] potential liability as a joint employer and indemnity made upon it are sufficiently protectable interests which may be impaired if TIR is not permitted to intervene." *Ferrell*, Ex. 3, at 7.

- "Accordingly, while Altenhofen does not directly assert an FLSA claim against CIS, it is certainly possible that CIS [pipeline inspection services company] and Southern Star [customer] were joint employers and CIS could be construed as jointly and severally liable under the facts of the present case. The potential for joint and several liability is a legally sufficient interest for intervention." *Altenhofen*, 2020 WL 3547947, at *3.

The compelling logic of *Robertson, Snow, Ferrell*, and *Altenhofen* apply equally here. Those cases applied the same test that governs intervention in the Fifth Circuit. *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994) (intervention is awarded if an intervenor satisfies the following requirements: "(1) [t]he application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that disposition of the action may, as **a practical matter**, impair or impeded

6

its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.") (emphasis added).

CIS meets and exceeds all four *Espy* requirements.

**First**, CIS's motion is timely; intervention at this early stage of the litigation does not unduly delay or prejudice the rights of the Shropshire or Midship. *See, e.g., Lejeune v. Sany America, Inc*., Civil Action No. 17-130-JJB-EWD, 2017 WL 231390, at *2 (M.D. La. July 10, 2017) (motion to intervene timely where suit "is still in its early stages").

**Second**, CIS has an interest in this case on multiple levels:

**i.** The central issue in this case is whether Shropshire's, Brister's, Garrett's, and Day's pay and duties qualified each for overtime exempt status under the FLSA. CIS has an interest in the adjudication of this issue because, as their employer, it set their job as overtime exempt and exclusively controlled their pay. Further, any liability resulting is joint and several among joint employers. *See* 29 C.F.R. § 791.2(f) (providing "that [a] joint employer is jointly and severally liable with the employer and any other joint employers for compliance with all of the applicable provisions of the [FLSA], including the overtime provisions . . .").

The potential that CIS (the actual employer) may be jointly liable with Midship (if Shropshire, Brister, Garrett, or Day are able to show that Midship also employed them) only enhances CIS's practical interest for intervention. *Blundell v. Home Quality Care Home Health Care*, *Inc*., No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *3-4, 6 (N.D. Tex. Nov. 29, 2017) illustrates that practical interest. There, the court stayed all proceedings in a FLSA suit against all joint employers after one joint employer filed a notice of bankruptcy **because** "[i]t is possible that a judgment under the FLSA against the [non-bankrupt joint employers] . . . would affect, and perhaps could be held binding on, the debtor [bankrupt joint employer's] estate." *Id*. The same

7

risk that *Blundell* identified there is the same risk here. There, it warranted a stay; here, it warrants intervention. *Kansas Public Emp. Retirement Sys. v. Reimer & Kroger Assoc.*, *Inc*., 60 F.3d 1304 (8th Cir. 2004) (granting intervention; the potential of joint and several liability was sufficient to allow intervention).

  **ii**. CIS not only has an interest in vindicating its proper classification of Shropshire, Brister, Garrett, and Day as overtime exempt but also has a distinct interest in enforcing their arbitration agreements. Moving forward without CIS could result in Shropshire, Brister, Garrett, and Day being able to avoid the arbitration forum in which each committed to bring their individual employment claims. *See Snow v. Silver Creek Midstream Holdings LLC*, No. 2:19-cv-00241, Dkt. 41 (D. Wyo. Mar. 3, 2020) (attached as Ex. 4) (granting a motion to compel arbitration because the arbitration agreement -- which used the exact same language and structure as those here -- required arbitration of all employment claims, regardless of whom they were brought against). Excluding CIS from this case would deprive it of the benefit of the bargain it struck: in exchange for employing these employees and paying them significant compensation, CIS received in turn their commitment to arbitrate and thus ensured "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010).

  **iii**. Midship has demanded that CIS indemnify any judgment or loss associated with Shropshire's, Brister's, Garrett's, and Day's claims. (Frye Declaration at ¶ 7.) This demand further establishes the right and need for CIS to intervene in order to ensure that the claims for overtime are vigorously and competently defended. *Team Worldwide Corp*. *v. Wal-Mart Stores, Inc*, No. 2:17-CV-00235-JRG, 2017 WL 6059303 at *4 (E.D. Tex. Dec. 7, 2017) (granting intervention in patent dispute where the defendant demanded indemnification; there was a sufficient interest

8

because the proposed-intervenors' "products, not [the defendant's], will be the focus of the litigation" and the potential for indemnification gave the proposed-intervenors "a resulting financial stake in the outcome of this case").

**Third**, disposing of this action without CIS would impair that trio of interests (its classification of these employees as FLSA exempt; its arbitration agreement with these employees; and its exposure to indemnity demands). *See Altenhofen*, 2020 WL 3547947, at *5. Most pointedly, its ability to defend against the claims that Shropshire's, Brister's, Garrett's, and Day's compensation ran afoul of the FLSA would, **as a practical matter**, be limited. If CIS -- the entity that set and paid their salary; determined that they were eligible for exempt status; and maintains the employment records on which their case is predicated -- is excluded, it would be deprived of the "opportunity to raise arguments and defenses before adjudication of its own liability to Plaintiff." *Clean Earth, Inc. v. Endurance Am. Ins.*, Civil Action No. 15-6111, 2016 WL 5422063, at *4-5 (D.N.J. Sept. 28, 2016) (granting motion to intervene where the intervenor could be held liable without having opportunity to dispute that liability; the intervenor's interest in raising its defenses was impaired and could not be cured "simply because [the intervenor] has an opportunity to defend against an indemnification claim by [the defendant]"). This is an interest that goes beyond financial loss and includes a practical reputational loss that could be viewed by CIS's other customers as a lack of capacity in managing its own workforce and its obligations under the FLSA. *See Uniloc 2017 LLC v. AT&T Mobility, LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117, at *3 (E.D. Tex. Apr. 23, 2019) (granting intervention to manufacturer because patent infringement allegations against its customer put the manufacturer's "customer base and reputation at risk").

**Fourth**, CIS's interest is not adequately represented by the existing parties. As *Robertson* recognized, "[a]lthough the interests of [CIS] are like those of [Midship], they diverge in that [CIS

9

is] the entit[y] that determine and cut the paychecks; they also have employment contracts with the opt-in plaintiff[] that [Midship] does not." 2020 WL 2105064, at *5; *see also Altenhofen*, 2020 WL 3547947, at *8.  Midship did not classify Shropshire, Brister, Garrett, or Day as exempt, nor write their paychecks.  Without CIS's "superior understanding" of their employment classification and "greater access to relevant documents and individuals," there is a genuine risk of its "interests being inadequately represented." *Advanced Dynamic Interfaces, LLC v. Aderas, Inc.*, C.A. No. 12-cv-963 (GMS), 2013 WL 6989428, at *1 n.1 (D. Del. Jan. 11, 2013) (granting intervention in a patent suit brought against intervenor's customer).

Moreover, CIS is one of multiple companies engaged by Midship to provide inspection services.  There is a separate risk that Midship may make tactical litigation decisions that favor other entities or itself at a sacrifice to CIS or even choose to settle in a manner that disadvantages CIS.  *See Adam Joseph Resources v. CAN Metals Ltd.*, 919 F.3d 856, 868 (5th Cir. 2019) (inadequacy of representation illustrated by a settlement that disadvantaged the intervening party). This risk include the fact that "in light of the indemnity demand, it is likely that [Midship] will point the finger to [CIS] and argue that [CIS] must bear sole liability for any FLSA violation." *Ferrell*, Ex. 3, at 8.

### B.    Rule 24(b)(1)(B): Permissive Intervention

Even if there could be doubt about intervention as of right, CIS is entitled to intervene as a matter of permission on those same considerations.  Rule 24(b)(1)(B) allows permissive intervention to anyone who timely asserts "a claim or defense that shares with the main action a common question of law or fact."  Both are met here.

There are undeniably **common questions of law**: *e.g.*, the enforcement of Shropshire's, Brister's, Garrett's, and Day's arbitration commitments.  That common issue in and of itself

warrants intervention. *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 27 (D.D.C. 2002) (granting permissive intervention in a trade secrets suit to the customer of both parties where the lawsuit questioned whether the customer conspired with the defendant to disclose trade secrets because, in part, the customer and the plaintiff had an arbitration agreement and both the customer and defendant argued that arbitration should be compelled); *Altenhofen*, 2020 WL 3547947, at *7 (determining whether a court is the proper forum for an FLSA claim given the arbitration clause that the alleged joint employer agreed to with the plaintiff is a common question of law); *Robertson*, 2020 WL 210564, at *6 (same).

There are also **common questions of fact**. The central issue in this suit is whether Shropshire's, Brister's, Garrett's, or Day's pay and duties qualify them as overtime exempt under the FLSA. These questions cannot be resolved without addressing the actions of CIS, which paid their salary and determined that their duties and salary met the administrative exemption requirements under the FLSA. CIS asserts a defense -- that it properly classified each as overtime exempt -- that shares common facts with any argument Midship may make on the merits. *Robertson*, 2020 WL 210564, at *6 (deciding that "[a]ny determination that Enbridge [the sued customer] violated the law would be based on the joint employment relationship, which would implicate the potential Intervenors" such that there are common questions of fact weighing in favor of permissive intervention).

Put differently, a full airing of the facts upon which liability depends is not possible without the participation of Shropshire's, Brister's, Garrett's, and Day's actual employer: CIS. *See Snow*, Ex. 2, at 10 (determining that allowing the actual employer -- also an inspection services company -- in an FLSA suit brought against that company's customer "adds value and

11

significantly advances the full and complete development of the factual and legal issues raised in the underlying action").

## IV. CONCLUSION

For these reasons, CIS should be allowed to intervene in this case.

Date: July 10, 2020

Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Nicole Figueroa
Nicole Figueroa
McDermott Will & Emery LLP
2501 N. Harwood Street
Dallas, Texas 75201
(214) 295-8062 (phone)
(972) 767-0190 (fax)
nfigueroa@mwe.com

Rachel B. Cowen, *pro hac vice forthcoming*
McDermott Will & Emery LLP
444 West Lake Street
Chicago, Illinois 60606
(312) 372-2000 (phone)
(312) 884-7700 (fax)
rcowen@mwe.com

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 7.1(D), CIS has conferred with Plaintiff, who opposes CIS's Motion to Intervene. CIS has also conferred with Defendant, who does not oppose CIS's Motion to Intervene

/s/ Nicole Figueroa
Nicole Figueroa

## **CERTIFICATE OF SERVICE**

The undersigned does certify that on the 10th day of July 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

/s/ Nicole Figueroa

Nicole Figueroa