UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FLOYD SHROPSHIRE, individually and on behalf of all others similarly situated,<br><br>v.<br><br>CHENIERE ENERGY, INC and MIDSHIP PIPELINE CO., LLC. | **Case No.: 4:20-cv-1175**<br>Collective Action (29 U.S.C. § 216(b)) |

**PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO COMPEL ARBITRATION**

Respectfully submitted,

**/s/ David I. Moulton**

By: _____

Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

# TABLE OF CONTENTS

1.   SUMMARY. ................................................................................................................1

2.   THE COURT DECIDES WHETHER MIDSHIP CAN GLOM ON TO OTHER PEOPLE'S
     CONTRACTS. ............................................................................................................2

3.   THE *SNOW* CASE DOES NOT GOVERN THIS DISPUTE. ............................................3

4.   THE PLAIN LANGUAGE OF THE ARBITRATION AGREEMENTS EXCLUDES DISPUTES
     AGAINST ANY CUSTOMER OF CIS. ..........................................................................6

5.   EQUITABLE ESTOPPEL DOES NOT ALLOW MIDSHIP TO ENFORCE THE CIS
     AGREEMENTS. ..........................................................................................................8

     A.   Employer Liability Under the FLSA is Joint and Several. ...........................13

     B.   Midship's Liability Turns on Whether It Satisfies the "Economic Realities"
          Test. ..............................................................................................................15

     C.   Plaintiffs Have Not Alleged Substantially Interdependent and Concerted
          Misconduct. ..................................................................................................17

     D.   Midship's Efforts to Distinguish *Reeves* Miss the Mark ..............................18

6.   CONCLUSION. .........................................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Ackler v. Cowlitz Cnty.*,
  7 Fed. App'x 543 (9th Cir. 2001) ..................................................................................15

*Acosta v. Jani-King of Oklahoma, Inc.*,
  905 F.3d 1156 (10th Cir. 2018) ....................................................................................16

*Acosta v. Maranto*,
  CIV-15-1378-D, 2017 WL 4158659 (W.D. Okla. Sept. 19, 2017) ...............................14

*Arthur Andersen LLP v. Carlisle*,
  556 U.S. 624 (2009) .................................................................................................. 2, 4

*Avedon Eng'g, Inc. v. Seatex*,
  126 F.3d 1279 (10th Cir. 1997) .....................................................................................2

*Baker v. Flint Eng'g & Const. Co.*,
  137 F.3d 1436 (10th Cir. 1998) ...............................................................................15, 16

*Barrentine v. Arkansas-Best Freight System*,
  450 U.S. 728 (1981) ...............................................................................................16, 17

*Bellman v. i3Carbon, LLC*,
  563 F. App'x 608 (10th Cir. 2014) .................................................................................2

*Brown v. Bob Moore Auto Grp., L.L.C.*,
  No. CIV-19-409-R, 2019 WL 3976848 (W.D. Okla. Aug. 22, 2019) ............................3

*Campbell Investments, LLC v. Dickey's Barbecue Restaurants, Inc.*,
  18-4055, 2019 WL 4235345 (10th Cir. Sept. 6, 2019) ...................................................7

*Carter v. Schuster*,
  2009 OK 94, 227 P.3d 149...........................................................................................2, 9

*Chao v. Barbeque Ventures, LLC*,
  547 F.3d 938 (8th Cir. 2008) ........................................................................................15

*Cinocca v. Orcrist, Inc.*,
  60 P.3d 1072 (Okla. Civ. App. 2002)......................................................................passim

*Copeland v. C.A.A.I.R., Inc.*, 17-CV-564-TCK-JFJ,
  2019 WL 4307125 (N.D. Okla. Sept. 11, 2019) ...........................................................16

*Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*,
  748 F.3d 249 (5th Cir. 2014) ........................................................................................10

*Dish Network, L.L.C. v. Ray*,
  900 F.3d 1240 (10th Cir. 2018) ..................................................................................2, 7

*Dumais v. Am. Golf Corp.*,
  299 F.3d 1216 (10th Cir. 2002).....................................................................................5, 7

*EEOC v. Waffle House, Inc.*,
  534 U.S. 279 (2002)........................................................................................................1

*Grigson v. Creative Artists Agency, L.L.C.*,
  210 F.3d 524 (5th Cir. 2000) ...................................................................................10, 11

*Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*,
  921 F.3d 522 (5th Cir. 2019) ..........................................................................................3

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  139 S. Ct. 524 (2019).......................................................................................................2

*Hensley v. State Farm Fire & Cas. Co.*,
   398 P.3d 11 (Okla. 2017) .................................................................................... 5, 6

*High Sierra Energy, L.P. v. Hull*,
   259 P.3d 902 (Okla. Civ. App. 2011) ........................................................ 9, 12, 13

*Howard v. Ferrellgas Partners, L.P.*,
   748 F.3d 975 (10th Cir. 2014) ................................................................................ 3

*Jacks v. CMH Homes, Inc.*,
   856 F.3d 1301 (10th Cir. 2017) ...................................................................... 5, 6, 7

*Johnson v. Convalescent Ctr. of Grady Cty., LLC*,
   2014 OK 102, 341 P.3d 71 ...................................................................................... 3

*Keel v. Titan Constr. Corp.*,
   639 P.2d 1228 (Okla. 1981) .................................................................................... 5

*Kuebel v. Black & Decker, Inc.*,
   643 F.3d 352 (2d Cir. 2001) .................................................................................. 15

*Lawson v. Life of the S. Ins. Co.*,
   648 F.3d 1166 (11th Cir.2011) .............................................................................. 10

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*,
   449 F. App'x 704 (10th Cir. 2011) ......................................................................... 4

*MS Dealer Service Corp. v. Franlin*,
   177 F.3d 942 (11th Cir. 1999) ...............................................................8, 10, 11, 12

*Oncology & Hematology P.C. v. U.S. Oncology, Inc.*,
   2007 OK 12, 160 P.3d 936 ...................................................................................... 2

*Prima Paint Corp. v. Flood & Conklin Mfg.*,
   388 U.S. 395 (1967) ................................................................................................ 3

*Reeves v. Enter. Prod. Partners, LP*,
   No. 19-CV-570-JED-FHM, 2020 WL 616166 (N.D. Okla. Feb. 10, 2020) ............ passim

*Riley Mfg. Co. v. Anchor Glass Container Corp.*,
   157 F.3d 775 (10th Cir. 1998) ........................................................................... 2, 5

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
   368 F. Supp. 3d 152 (D. Mass. 2019) ................................................................... 14

*Sam Reisfeld & Son Import Co. v. S.A. Eteco*,
   530 F.2d 679 (5th Cir.1976) ................................................................................. 11

*Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*,
   640 F.3d 471 (1st Cir. 2011) .................................................................................. 7

*Spahr v. Secco*,
   330 F.3d 1266 (10th Cir. 2003) .............................................................................. 3

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ................................................................................................ 1

*Tabb v. Mentor Prot. Serv. LLC*,
   CIV-17-1130-D, 2018 WL 3213622 (W.D. Okla. June 29, 2018) ................... 14, 17

*Thompson v. Real Estate Mortgage Network*,
   748 F.3d 142 (3d Cir. 2014) ................................................................................. 14

*Weckesser v. Knight Enterprises S.E., LLC*,
   735 Fed. App'x 816 (4th Cir. 2018) .................................................................... 3, 7

*Wilkinson v. Dean Witter Reynolds, Inc.*,
   1997 OK 20, 933 P.2d 878 ...................................................................................... 2

*Williams v. TAMKO Bldg. Prod., Inc.*,
   451 P.3d 146 (Okla. 2019) .................................................................................. 4, 9

**Statutes**

9 U.S.C. § 2 ..................................................................................................................2

Okla. Stat. tit. 15, § 29 ...............................................................................................5

**Regulations**

29 C.F.R. § 791.2 ......................................................................................................14

1.  **Summary.**

Floyd Shropshire and Opt-Ins Matthew Brister and Winfrey Garrett (collectively, "Plaintiffs") never entered into an arbitration agreement with either Cheniere Energy, Inc. or Midship Pipeline Company, LLC (collectively, "Midship").[1] Although Plaintiffs entered into arbitration agreements (the CIS Agreements) with Cleveland Integrity Services, Inc. (CIS), CIS isn't being sued. Nothing in the CIS Agreements between Plaintiffs and CIS requires Plaintiffs to arbitrate their claims against Midship. Nor do the CIS Agreements allow Midship, a non-party and non-signatory, to enforce them. These agreements are very different from the agreement that CIS has with Danny Day, who Midship also seeks to compel to arbitration. Day's arbitration agreement with CIS explicitly makes CIS's **customers** (such as Midship) third-party beneficiaries to the arbitration agreement. Neither Plaintiffs nor Day oppose the motion to compel Day to arbitration. The arguments made in this response are directed to Midship's efforts to compel arbitration of Plaintiffs' claims. Plaintiffs' arbitration agreements do not allow Midship to compel arbitration because the arbitration clause expressly applies only to disputes between Plaintiffs (the "Employee") and CIS (the "Company"). ECF 13-1, p. 17.

Arbitration is a matter of contract. The law is clear "parties may specify *with whom* they choose to arbitrate their disputes." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 683 (2010); *EEOC v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002) ("[N]othing in the [FAA] authorizes a court to compel arbitration of any issues, **or by any parties***, that are not* **already covered** in the agreement." (emphasis added)). And under Oklahoma law, a non-signatory may enforce an arbitration agreement under the theory of estoppel only "when the claims are integrally related to the contract containing the arbitration clause." *Carter v. Schuster*, 2009 OK 94, ¶ 14, 227 P.3d 149.

---

[1] Cheniere Energy, Inc. is a liquified natural gas producer. Midship Pipeline Company, LLC, its subsidiary, is a natural gas pipeline construction company.

Here, neither the plain language of the agreement nor the nature of Plaintiffs' claims authorize Midship to write itself into the CIS Agreements.

## 2. The Court Decides Whether Midship Can Glom on to Other People's Contracts.

Midship insists an arbitrator must decide whether there is even an agreement to arbitrate between it and Plaintiffs. *See* ECF 13 at 5. That's flatly incorrect. Issues of arbitrator delegation only come into play after the Court has determined an agreement to arbitrate exists. Supreme Court precedent on this point is emphatic: "**To be sure, … the court** determines whether a valid arbitration agreement exists." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (emphasis added) (citing 9 U.S.C. § 2). It is only after the Court determines "**if a valid agreement exists**" that it considers whether "the agreement delegates the arbitrability issue to an arbitrator[.]" *Id.* Moreover, "ordinary principles of state contract law determine whether there is a valid agreement to arbitrate." *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

While "the presence of an arbitration [agreement] generally creates a presumption in favor of arbitration, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (internal quotation marks and citations omitted); *see also Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("[W]hen the dispute is whether there is a valid and enforceable arbitration agreement in the first place, the presumption of arbitrability falls away."). Thus, before a court may consider an arbitration agreement's terms, "a threshold matter ... must be established" – the "existence of an agreement to arbitrate." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1997); *Wilkinson v. Dean Witter Reynolds, Inc.*, 1997 OK 20, ¶ 9, 933 P.2d 878, 880 (same). After all, if a party has not agreed to arbitrate a dispute, he cannot be forced to do so. *See Dish Network, L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018); *Okla. Oncology & Hematology P.C. v. U.S. Oncology, Inc.,* 2007 OK 12 ¶ 22, 160 P.3d 936 (arbitration is a matter of consent, not coercion). Section 4 of the FAA

"requires judicial resolution of issues that go to the 'making' of an agreement for arbitration," and the Court may "compel arbitration of a particular dispute" only when it is "satisfied that the 'making' of the agreement to arbitrate is not at issue" *Spahr v. Secco*, 330 F.3d 1266, 1269–70 (10th Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403–04 (1967)). The Court looks to state law principles of contract formation to determine whether an agreement to arbitrate exists in the first place. *See Howard v. Ferrellgas Partners, L.P.,* 748 F.3d 975, 979 (10th Cir. 2014); *Brown v. Bob Moore Auto Grp., L.L.C.*, No. CIV-19-409-R, 2019 WL 3976848, at *2 (W.D. Okla. Aug. 22, 2019).

"When parties dispute whether a non-signatory can compel arbitration pursuant to an arbitration clause, their dispute **questions the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide.**" *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 530 (5th Cir. 2019) (emphasis added). Whether Midship can compel arbitration addresses the "existence" of an agreement to arbitrate (not its scope), meaning this Court, not an arbitrator, decides the issue. *Id.* The question here is "who must arbitrate," which is a question for the Court, rather than "what must be arbitrated." *Weckesser v. Knight Enterprises S.E., LLC*, 735 Fed. App'x 816, 821 (4th Cir. 2018). "To assure that the parties have consented to arbitration, the courts will decide whether there is a valid enforceable arbitration agreement, whether the parties are bound by it and whether the parties agreed to submit a particular dispute to arbitration." *Johnson v. Convalescent Ctr. of Grady Cty., LLC*, 2014 OK 102, ¶ 6, 341 P.3d 71, 73.

**3.  The *Snow* Case Does Not Govern This Dispute.**

Midship asks the Court to rely on an unpublished ruling from the District of Wyoming (*Snow v. Silver Creek Midstream Holdings, LLC, et al.*, Case No. 19-CV-00241-ABJ, ECF No. 41 (D. Wyo. Apr. 14, 2020) (attached as ECF No. 13-2)) to find the language of the CIS Agreements

encompasses Plaintiffs' claims against Midship. The *Snow* case, however, is not only wrongly decided, it is distinguishable in several respects.

First, *Snow* interprets Wyoming, not Oklahoma law. *Snow*, ECF No. 13-2. Thus, it is not only nonprecedential, it does not even address the applicable law. Second, *Snow* based its decision on finding "Snow does not contest that he signed the arbitration agreement or that it covers the type of dispute he brings now before the Court." *Snow*, ECF No. 13-2 at p. 8. Here, Plaintiffs clearly contest that the arbitration agreements at issue cover the type of dispute brought before this Court.

The *Snow* decision also gets it wrong in at least two very significant respects. First, the *Snow* Court found: "The Court determines this case can be resolved on the arbitration agreement itself, without addressing matters of joint employment, equitable estoppel, or third-party beneficiaries." *Snow*, ECF No. 13-2 at p. 8. The *Snow* Court's approach is incorrect because the U.S. Supreme Court determined that "'traditional principles of state law allow a contract to be enforced by or against nonparties to the contract through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel,'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009). Thus, in determining whether **nonsignatories** can enforce an arbitration clause, courts look to these "traditional principles of state law," not, as the *Snow* court did, to the scope of the claims the **signatories** agreed to arbitrate with each other. *See, e.g., Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704 (10th Cir. 2011); *Cinocca v. Orcrist*, 60 P.3d 1072, 1075 (Okla. Civ. App. 2002); *Williams v. TAMKO Bldg. Prod., Inc.*, 451 P.3d 146 (Okla. 2019). While an analysis under a third-party beneficiary theory involves an analysis of the arbitration agreement, that is not the analysis the *Snow* Court applied. Indeed, what the *Snow* Court achieved was a back-door finding that the defendant in that case was a third-party beneficiary of the arbitration agreement. But applying a proper third-party beneficiary analysis under <u>Oklahoma</u> law, neither the defendant in *Snow*, nor Midship here, is a third-party beneficiary.

By statute, Oklahoma law only permits a third party to enforce a contract made "expressly for [the third party's] benefit." Okla. Stat. tit. 15, § 29. While the contract need not name the third party, the benefit must be "expressly" directed to the third party. *Hensley v. State Farm Fire & Cas. Co.*, 398 P.3d 11, 19 (Okla. 2017); *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981). Expressly, means "in an express manner; in direct or unmistakeable terms; explicitly; definitely; directly." *Hensley*, 398 P.3d at 19. The governing principle is whether the terms of the contract show a clear intent by the signatories to confer a legally enforceable benefit on a third party. *Keel*, 639 P.2d at 1231. While the arbitration agreements here and *Snow* may cast a wide net regarding the types of claims that must be arbitrated, none of these agreements address arbitration of claims against clients of the company. Because these contracts do not show in "unmistakeable terms" that the parties intended the defendants to benefit from the arbitration provisions, the defendants have no standing to enforce them as a third-party beneficiaries. *Reeves v. Enter. Prod. Partners, LP*, No. 19-CV-570-JED-FHM, 2020 WL 616166, at *3 (N.D. Okla. Feb. 10, 2020).

Second, the *Snow* Court based it ruling on large part on its application of the FAA's presumption in favor of arbitration. *Snow*, ECF 13-2 at pp. 10, 12. However, no such presumption applies when, as in *Snow* and here, "the dispute is whether there is a valid and enforceable arbitration agreement in the first place." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998); *see also Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) (recognizing that "this presumption disappears when the parties dispute the existence of a valid arbitration agreement"); *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017) (same). Accordingly, this Court should not adopt either the *Snow* Court's analysis or its finding.

**4.  The Plain Language of the Arbitration Agreements Excludes Disputes Against Any Customer of CIS.**

Midship effectively concedes it is not a third-party beneficiary of the CIS Agreements.[2] The plain language of the CIS Agreements pertains only to disputes between "the Company" [CIS] and "the Employee" [Plaintiffs]. *See* ECF 13-1. Paragraph 2 of the CIS Agreements details the limits of the arbitration clause. This language states specifically **with whom** Plaintiffs and CIS are agreeing to arbitrate (each other), as well as what disputes (those that have arisen or will arise out of the parties' employment relationship) they will arbitrate. *Id.* at p. 17. The arbitration provision states:

> **1.  Mutual Agreement**
>
> This Agreement covers all claims by the Employee against the Company or by Company against the Employee. All references to "Employee" include his or her estate or other representatives; all references to "Company" include its affiliates or agents.
>
> The Employee and the Company each knowingly and voluntarily waive any and all rights to a trial before a judge or jury in a court of law and instead agree to proceed exclusively in arbitration on claims covered by this Agreement.
>
> **2.  Claims Covered**
>
> The Employee and the Company agree to arbitrate all claims that have arisen or will arise out of Employee's employment with or termination from the Company regardless of whether those are claims under common law or under statutory law. The only exceptions are (a) claims for which arbitration is unavailable as a matter of law, such as workers' compensation benefits, unemployment compensation benefits, or charges under the National Labor Relations Act; (b) claims under any ERISA plan that contains its own internal appeal process; and (c) claims for injunctive relief pending the outcome of arbitration by either the Employee or the Company.
>
> The Employee and the Company also agree that there shall be no class actions, collective actions, or multiple-employee claims of any kind. Rather, each arbitration will be limited to a single employee; the arbitrator may not consolidate more than one person's claims for any purpose.

*Id.* The arbitration agreement's plain language (including the provision waiving class claims) is limited to disputes between Plaintiffs and CIS. *Id.*

Midship nevertheless contends it should be allowed to write itself into and enforce the CIS Agreements. ECF 13. Midship argues that because the scope of claims Plaintiffs agreed to arbitrate against CIS is broad, their FLSA claims against Midship are necessarily covered. *Id.*, at p. 2. But the

---

[2] With the exception of Danny Day.

CIS Agreements expressly state "The Employee [the Plaintiffs] and the Company [CIS] agree to arbitrate all claims that have arisen or will arise out of **Employee's employment with or termination from the Company**…." ECF 13-1, p. 17. Under the plain terms of the contract, the **only** parties to the CIS Agreements are Plaintiffs and CIS. *Id.* By agreeing to arbitrate claims "that have arisen or will arise out of **Employee's employment with or termination from the Company**…," Plaintiffs agreed only to arbitrate claims they may have which relate to their employment with or termination from CIS. *Id.*

The question before the Court is "who must arbitrate," rather than "what must be arbitrated." *Weckesser v. Knight Enterprises S.E., LLC*, 735 F. App'x 816, 821 (4th Cir. 2018) (holding the presumption in favor of arbitration does not apply to the issue of whether an agreement to arbitrate exists between the parties). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). In fact, the existence of a valid arbitration agreement and the interpretation of a valid arbitration agreement's scope are two separate inquiries. *Id.* The first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute. *Dish Network L.L.C. v. Ray*, 900 F.3d 1240, 1243 (10th Cir. 2018). Therefore, the question before the court is not what Plaintiffs agreed to arbitrate, but with whom they agreed to arbitrate. *Weckesser*, 735 F. App'x at 821. The CIS Agreements do not require Plaintiffs to arbitrate with third-parties like Midship.

Midship, as the party seeking arbitration, bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement. *Campbell Investments, LLC v. Dickey's Barbecue Restaurants, Inc.*, 18-4055, 2019 WL 4235345, at *6 (10th Cir. Sept. 6, 2019); *see Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474 (1st Cir. 2011)("A party who

is seeking to compel arbitration must demonstrate "that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope"). Midship failed to satisfactorily answer the threshold question of who must arbitrate.

**5.   Equitable Estoppel Does Not Allow Midship to Enforce the CIS Agreements.**

Midship argues Plaintiffs should be required to arbitrate their claims against it because its conduct is "intertwined" with the staffing companies. ECF 13 at pp. 11-17 (citing *Cinocca v. Orcrist, Inc.*, 60 P.3d 1072, 1075 (Okla. Civ. App. 2002)). In *MS Dealer Service Corp. v. Franlin*, 177 F.3d 942, 947 (11th Cir. 1999), the court described two circumstances in which equitable estoppel will allow a nonsignatory to compel arbitration. The first applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the agreement in asserting its claims against the nonsignatory. *Id.*; *Reeves v. Enter. Prod. Partners, LP*, No. 19-CV-570-JED-FHM, 2020 WL 616166, at *3 (N.D. Okla. Feb. 10, 2020). When each of a signatory's claims against a nonsignatory reference or presume the existence of the written agreement, the signatory's claims "arise out of and relate directly to the written agreement," and the plaintiff may be required to arbitrate them. *Id.*

In the second set of circumstances described by the Eleventh Circuit, equitable estoppel will be warranted when a signatory to the arbitration agreement "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id.* (alterations omitted). In either case, the determination turns on the nature of the plaintiff's claims. *Id.*

Midship concedes the Oklahoma Supreme Court has **not adopted** the Eleventh Circuit's equitable estoppel theory. ECF 13 at p. 11. Indeed, the Oklahoma Supreme Court has yet to adopt this equitable estoppel theory at all, even in cases where it might have done so. *Reeves*, 2020 WL 616166, at *3. On the contrary, where the argument has been made in the context of an arbitration

agreement, the court has applied a traditional theory of equitable estoppel. *See Williams v. TAMKO Bldg. Prod., Inc.*, 451 P.3d 146 (Okla. 2019); *Carter v. Schuster*, 227 P.3d 149 (Okla. 2009). In *Williams*, homeowners sued a shingle manufacturer whose product their contractors had used in the construction of a new roof. *Williams*, 451 P.3d at 149–50. The manufacturer attempted to enforce an arbitration clause included in the product's warranty, arguing that equitable estoppel permitted it to enforce the arbitration clause even though the contractors, not the homeowners, were the contracting party. The court rejected this argument, holding that equitable estoppel required: 1) a false representation or concealment of facts; 2) made with actual or constructive knowledge of facts; 3) to a person without knowledge of, or the means of knowing, those facts; 4) with the intent that it be acted upon; and 5) the person to whom it was made acted in reliance upon it to his detriment. *Williams*, 451 P.3d at 153–54. Applying the rule, the court held that the homeowners were not estopped from challenging the arbitration agreement because they had made no false representation nor tried to conceal facts from the defendant. *Id.* at 154.[3]

The Oklahoma Supreme Court has not adopted the *MS Dealer* equitable estoppel theory. Thus, Midship relies on two Oklahoma Civil Court of Appeals decisions that have. *Cinocca v. Orcrist, Inc.*, 60 P.3d 1072 (Okla. Civ. App. 2002); *High Sierra Energy, L.P. v. Hull*, 259 P.3d 902 (Okla. Civ. App. 2011). Both decisions, however, are distinguishable.

In *Cinocca*, the plaintiff alleged that her former employer's contractor, Orcist, deleted information from her personal computer while it was at the office. 60 P.3d at 1073. Cinocca did not deny that her employer, the Association, had the right under her separation agreement to retrieve certain materials from her personal computer; instead, she alleged that Rainey (acting for the Association) and Orcist (at Rainey's direction), acted improperly in exercising the Association's

---

[3] Under this formulation, Plaintiffs would not be "equitably estopped" because Midship has produced no evidence that it detrimentally relied on false statements made by the plaintiffs. *Reeves*, 2020 WL 616166, at *3.

rights under the agreement. *Id.* at 1073-74 ("The record reflects Orcrist's technician, at the direction of Rainey, did delete some software from Cinocca's personal computer while it was still on the Association's premises.…"). The Court found Cinocca's claims against Orcrist "relate[d] to the rights and obligations arising under the [a]greement" containing the arbitration provision, and thus was within the scope of the agreement. *Id.* at 1074.

Turning to whether Orcist could compel arbitration, the *Cinocca* court found it could because Cinocca's claims against Orcrist and Rainey were "inherently inseparable." *Id.* at 1075. In arriving at this holding, the Court looked to two federal cases, *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir.1999) and *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000). *Cinocca*, 60 P.3d at 1075. Notably, both *MS Dealer* and *Grigson* pre-date the Supreme Court's in *Arthur Andersen*. Therefore, to the extent those decisions suggest federal law should guide these issues, "those indications are overruled or at least undermined to the point of abrogation[.]" *Crawford Prof'l Drugs, Inc. v. CVS Caremark Corp.*, 748 F.3d 249, 262 (5th Cir. 2014) (quoting *Lawson v. Life of the S. Ins. Co.,* 648 F.3d 1166, 1172 (11th Cir.2011). Nonetheless, to the extent these federal theories survive in Oklahoma, they do not apply here.

In *MS Dealer*, the plaintiff sued both a signatory and nonsignatory, alleging they conspired to engage in a scheme to defraud her. In applying concerted misconduct estoppel the Court held that "[i]t is important to note that Franklin's obligation to pay the $990.00 charge arose under the Buyers Order **and** that she specifically alleges that MS Dealer worked hand-in-hand with Jim Burke and Chrysler Credit Corporation in this alleged fraudulent scheme. Her 'allegations of such pre-arranged, collusive behavior establish[ ] that [her] claims against [MS Dealer are] intimately founded in and intertwined with the obligations imposed by the [Buyers Order].'" *MS Dealer*, 177 F.3d at 948 (emphasis added). Estoppel was applied because the concerted actions were intertwined with obligations of the contractual agreement. *Id.* The court held application of equitable estoppel was

10

also warranted because otherwise "the arbitration proceedings [between the two signatories] would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Franklin*, 177 F.3d at 947 (citing *Sam Reisfeld & Son Import Co. v. S.A. Eteco*, 530 F.2d 679, 681 (5th Cir.1976)). It would serve no purpose to send one defendant to arbitrate a claim of conspiracy while leaving the other alleged conspirator to proceed in litigation.

The *Grigson* court adopted *MS Dealer*, and found that estoppel was appropriate because "[t]he claims [were] intertwined with, and dependent upon, the distribution agreement, including, but not limited to, Defendants (non-signatories) and TriStar (non-defendant signatory) being charged with interdependent and concerted misconduct." 210 F.3d at 529. This, the court observed, was "the quintessential situation for when the doctrine [of equitable estoppel] should be applied." *Id.* at 531.

In *Grigson*, the plaintiff sued TriStar and two nonsignatory defendants alleging breach of a movie distribution agreement. The plaintiff dismissed TriStar as a defendant, but continued to allege the remaining two defendants were liable for TriStar's decision to give the movie a limited release. *Id.* at 529 (noting the complaint alleged that "because of Defendants' actions, 'TriStar failed to exercise its good faith judgment in promoting, exploiting, and distributing' the movie"). Thus, while TriStar was no longer a defendant, its actions and its agreement were at the "heart of this action." *Id.* at 529. The Court found that because the plaintiff alleged the nonsignatory defendants were accountable for TriStar's decision and actions under the agreement, TriStar was still, in essence, a party to the action. As such, TriStar's detrimental reliance on the plaintiff's agreement to arbitrate—contained in the contract at issue—could not be denied: "*In essence, TriStar is a defendant*. Each action turns on the meaning of the distribution agreement's numerous—often intricate—provisions, which are unique to the film industry, **and** on TriStar's conduct in relation to that agreement." *Id.* at 530 (emphasis

added). As in *MS Dealer*, the *Grigson* Court found the claims against the non-signatories depended on the inseparable conduct tied to obligation of the agreement containing the arbitration provision.

The same logic applied in *Cinocca*. The plaintiff's claims against Rainey and Orcist were inseparable: she alleged Rainey breached his duties by ordering Orcist to delete her programs and alleged Orcist breached a duty to her by deleting the programs upon Rainey's order. It would make no sense to have these claims proceeded in separate actions. Under this theory, it is the *signatory's* rights that justify estoppel because "the signatory, in essence, becomes a party, with resulting loss, among other things, of time and money because it requires participation in the court proceedings." *Cinocca*, 60 P.3d at 1075. There is "concomitant detrimental reliance on the part of the signatory because the signatory-plaintiff is seeking to avoid the agreement to use generally less expensive arbitration by bringing the action **against a nonsignatory charged with intertwined conduct**." *Id.* (emphasis added).

The other Oklahoma case on this issue, *High Sierra Energy, L.P. v. Hull*, involved similarly claims "intertwined" with the contract containing an arbitration clause. There, High Sierra had executed a purchase agreement ("PSA") with Hull and others for their businesses and assets. 2011 OK CIV APP 77, 259 P.3d 902, 904. High Sierra also hired them to stay on as executives. *Id.* Less than two years later, High Sierra sued them for misappropriation, unfair competition, unjust enrichment, breach of fiduciary duty, and negligence, alleging they "neglected their employment duties and utilized High Sierra's assets and property to benefit the Company Appellants' competing businesses." *Id.* at 905-06. High Sierra expressly alleged that "[a]ll defendants in both cases are **alleged to be part of the same concerted and deliberate effort** to thwart any benefit High Sierra intended to obtain from the PSA" and that the "malfeasance of the Individual Defendants were (sic) part of a **concerted and premeditated plan**." *Id.* at 904-5 (emphasis added). The defendants filed

12

a motion to compel arbitration, based on a provision of the PSA, which pertained to "all disputes between the Parties arising under or related to this Agreement…" *Id.* at 905.

The trial court denied arbitration, but the court of appeals reversed, finding the claims were integrally related to the PSA, and claims against the signatory defendant were substantially intertwined with claims against the nonsignatory defendants. *Id.* at 908-09. The Court expressly held that "High Sierra's claims against Kellie Hull clearly relate to the PSA. The foundation for High Sierra's claims all rest upon the benefits High Sierra expected to receive from the PSA, as well as the alleged pre-meditated and concerted efforts of Appellants to deprive High Sierra of the same." *Id.* at 907. It also found that the petition "clearly alleges **contrived efforts among the Appellants** to injure High Sierra and deprive it of the benefits conferred under the PSA." *Id.* at 909 (emphasis added). As such, the claims against all defendants were "inherently inseparable" and thus all were subject to arbitration. *Id.*

Each case applying concerted misconduct estoppel involved a complete unity of allegations against the signatory and nonsignatory. In other words, in every scenario, the plaintiff sought to hold the nonsignatory liable for the actions of the signatory. And this is how Midship tries to avoid the plain language of the CIS Agreement – Midship claims Plaintiffs' allegations against it are really joint employer claims against Midship and non-party CIS. ECF 13. Specifically, Midship argues Plaintiffs' claims against it for unpaid overtime under the FLSA arise from Plaintiffs' employment relationship with CIS and are therefore "intertwined" with the CIS Agreements. This argument misconstrues both the nature of Plaintiffs' FLSA claims and the doctrine of equitable estoppel.

### A. Employer Liability Under the FLSA is Joint and Several.

Plaintiffs contend Midship acted as their employer and is liable to them for unpaid overtime under the FLSA. ECF 1. To prove their claim, Plaintiffs must establish: (1) an employer-employee relationship existed with Midship during the unpaid overtime periods claimed; (2) they engaged in

activities within the coverage of the FLSA; (3) Midship violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Tabb v. Mentor Prot. Serv. LLC*, CIV-17-1130-D, 2018 WL 3213622, at *2 (W.D. Okla. June 29, 2018).

Importantly, Plaintiffs make no claim against CIS, including any claim that CIS jointly employed them. ECF 5. Nevertheless, Midship argues that because Plaintiffs allege Midship was their employer or joint employer, Plaintiffs' FLSA claims against Midship must necessarily arise out of his employment relationship with CIS. *See* ECF 13. In doing so, Midship ignores the fact that: (1) Plaintiffs do not, in fact, make any allegation of joint employment or mention CIS in any way (ECF 5); (2) the FLSA contemplates that a worker may have multiple employers (*Acosta v. Maranto*, CIV-15-1378-D, 2017 WL 4158659, at *2 (W.D. Okla. Sept. 19, 2017)); and (3) liability among such employers is joint and several (*Id.*; *see* 29 C.F.R. § 791.2).

"To effectuate the FLSA's remedial purposes, the Supreme Court 'has instructed that the determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts.'" *Id.* (internal citations omitted). "[T]he employment relationship test [under the FLSA] is the same whether there is one putative employer or multiple. Crucially, **the test is applied to each putative employer individually."** *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F. Supp. 3d 152, 159 (D. Mass. 2019) (emphasis added); *see also Thompson v. Real Estate Mortgage Network*, 748 F.3d 142, 153 (3d Cir. 2014) ("The FLSA imposes individual liability on "any person acting directly or indirectly in the interest of an employer in relation to an employee").

While the analysis of the alleged employment relationship between Plaintiffs and Midship might consider some facts related to Plaintiffs' relationship with CIS, the fact finder will not decide whether an employment relationship also existed between CIS and Plaintiffs. In other words, this

Court is not being asked to determine CIS's putative status as an employer; the Court need only determine Midship's employer status because those are the only claims before it.

Each employer has an independent duty to properly classify and pay its employees:

> **[T]he mandate of the statute [the FLSA] is directed to the <u>employer</u> and he may <u>not</u> escape it by delegating it to others. The duty rests on the <u>employer</u> to inquire into the conditions prevailing in his business.** He does not rid himself of that duty because the extent of business may preclude his personal supervision, and compel reliance on [others]. He must then stand or fall with those whom he selects to act for him…**the duty must be held personal**, or we nullify the statute [the FLSA].

*Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942-43 (8th Cir. 2008) (rejecting the proposition that employers can delegate their FLSA compliance and payroll management duties to third-parties and escape liability under the FLSA) (emphasis added); *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 363 (2d Cir. 2001) (finding an employer's duties under the FLSA to be "non-delegable" and that "an employer cannot…transfer his statutory burdens of accurate record keeping, and of appropriate payment" to others); *Ackler v. Cowlitz Cnty.*, 7 Fed. App'x 543, 546 (9th Cir. 2001) (noting an employer "cannot entirely delegate its own responsibility to comply with the Fair Labor Standards Act" to a third-party). As Plaintiffs' employer, Midship must properly pay and classify Plaintiffs and it cannot escape liability by contending it merely relied on CIS's classification of Plaintiffs or its payment system. And it is Midship's liability under the FLSA which is before this Court – not CIS's liability. Plaintiffs' claims against Midship are not intertwined with any claims he might have against CIS. **No finding in this Court will determine Plaintiffs' employment relationship with CIS.**

### B. Midship's Liability Turns on Whether It Satisfies the "Economic Realities" Test.

To determine Midship's FLSA liability as an employer, the court must consider the economic realities of the working relationship between Plaintiffs and Midship. In analyzing this relationship, Courts in the Tenth Circuit use the following factors: (1) authority to hire and fire employees; (2) authority to supervise and control work schedules or employment conditions; (3) authority to determine the rate and method of payment; and (4) maintenance of employment records. *Baker v. Flint*

*Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998); *Copeland v. C.A.A.I.R., Inc.*, 17-CV-564-TCK-JFJ, 2019 WL 4307125, at \*3 (N.D. Okla. Sept. 11, 2019).

Similarly, Courts apply a six-factor economic realities test to determine an employee's classification status as either an employee or independent contractor, which considers: "(1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; (5) the degree of skill required to perform the work; and (6) the extent to which the work is an integral part of the alleged employer's business." *Baker*, 137 F.3d at 1440.

Neither test requires the Court to consider any potential liability of CIS. To the contrary, the Supreme Court has emphasized the "striking breadth" of the definition of "employee," such that the Tenth Circuit requires courts to ignore contractual agreements seeking to limit the same, finding that the "inquiry is not limited by any contractual terminology or by traditional common law concepts of 'employee' or 'independent contractor.'" *Id.*; *see also Acosta v. Jani-King of Oklahoma, Inc.*, 905 F.3d 1156, 1159-60 (10th Cir. 2018) ("The inquiry is not limited to the contractual terminology between the parties or the way they choose to describe the working relationship").

This is not surprising. An employee may not waive his rights under the FLSA by contractually agreeing he is an independent contractor, or that a party is not his employer. *See Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 740 (1981) ("we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate"). Simply put, the terms of a contract do not control an employee's proper classification status – the economic realities of the working relationship do.

Therefore, Plaintiffs' claims against Midship under the FLSA cannot be intertwined with any theoretical claims against CIS. This Court cannot rely on the CIS Agreements or CIS's conduct to determine Plaintiffs' classification status as an independent contractor or employee of Midship.

16

Plaintiffs need not depend on the CIS Agreements to prosecute their FLSA claims against Midship. *See Lenox*, 449 Fed. App'x. At 709 ("it is not enough that the contract is factually significant to the plaintiff's claims or has a "but-for" relationship with them"). Critically, the fact that Plaintiffs would not have worked for Midship "but for" the CIS Agreements is insufficient to trigger intertwined claims estoppel. *Id.*

Midship is neither a signatory to the CIS Agreements nor a third-party beneficiary to the agreements. Because Midship fails to show that Plaintiffs' claims against it are intertwined with the CIS Agreements, it may not use the arbitration provision contained therein to compel arbitration under a theory of intertwined estoppel.

### C.  Plaintiffs Have Not Alleged Substantially Interdependent and Concerted Misconduct.

Whether CIS misclassified Plaintiffs or properly paid Plaintiffs (claims Plaintiffs have not brought) is not determinative of Midship's FLSA liability. *See Reeves*, 2020 WL 616166. While in both *Cinocca* and *High Sierra*, the plaintiffs' claims alleged that the nonsignatory defendants acted in concert with the signatory defendants, here, the plaintiffs allege no "substantially interdependent and concerted misconduct" between Midship and CIS. Rather, the allegations are against Midship alone. To succeed at trial, the plaintiffs would have to establish: (1) an employer-employee relationship existed with Midship during the unpaid overtime periods claimed; (2) they engaged in activities within the coverage of the FLSA; (3) Midship violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *See Tabb v. Mentor Prot. Serv. LLC*, 2018 WL 3213622, at *2 (W.D. Okla. June 29, 2018). None of these elements requires the plaintiffs to prove any misconduct on the part of CIS. *Reeves*, 2020 WL 616166 at *6.

Midship argues that claims against one "joint employer" are inseparable from the conduct of the other employer. (ECF 13 at p. 15). Plaintiffs, however, have not alleged Midship to be a "joint employer," (*see* ECF 5). Moreover, even if Midship and CIS were "joint employers," Midship has not

explained why joint employer status, in and of itself, would entitle Midship to enforce the arbitration agreements. Equitable estoppel, as articulated by the Oklahoma Court of Civil Appeals, requires a showing that the plaintiff's claims raise allegations "substantially interdependent and concerted misconduct." *Cinnoca*, 60 P.3d 1074. Here, Plaintiffs allege no misconduct on the part of CIS, and Midship offers no authority suggesting that they would have to prove any such conduct in order to sustain their claims against Midship. Under these circumstances, equitable estoppel does not operate to grant to Midship a right to enforce the CIS Agreements to which it is not a signatory. *Reeves*, 2020 WL 616166 at *6.

### D. Midship's Efforts to Distinguish *Reeves* Miss the Mark

Midship seeks to distinguish the *Reeves* decision, which held under strikingly similar circumstances and identical arguments made by Midship here, that "concerted misconduct" equitable estoppel did not allow a nonsignatory to compel arbitration pursuant to the arbitration agreements of its staffing companies. Midship argues that *Reeves* misread *Cinocca* and *High Sierra* by holding that allegations of interdependent conduct must *also* turn on the underlying contract. ECF 13 at p. 14. Midship is dead wrong on this point.

Nothing in the *Reeves* Court's analysis reflects that it treated the two types of *MS Dealer* estoppel as conjunctive rather than disjunctive. Nowhere does the *Reeves* Court state or even imply that the defendant could not use concerted misconduct estoppel because the claims were not intertwined with the agreement. A plain reading of the opinion reflects the *Reeves* Court followed *MS Dealer* and considered (and rejected) both possible types of estoppel.

The *Reeves* Court's holding came from its examination of the two Oklahoma Courts of Appeals cases addressing this type of estoppel, and their federal roots: *Cinocca* and *High Sierra,* along with *MS Dealer* and *Grigson*. All these cases require the alleged liability of the nonsignatory to turn, at least in part, on liability for the signatory's conduct. The *Reeves* Court applied this standard, examining the

allegations by Reeves against the nonsignatory defendant. *Reeves*, 2020 WL 616166 at *6. It looked to what Reeves must prove against the nonsignatory defendant and held that none of the elements of his FLSA claim "requires [him] to prove any misconduct on the part of [the signatory staffing company]." *Id.* The *Reeves* Court did not, as Midship suggests, require the nonsignatory defendant to show allegations of concerted misconduct that arise out of the agreement. It required the nonsignatory defendant to show that Reeves' action depended on proving the nonsignatory defendant's liability was inseparable from the signatory staffing company's alleged misconduct.

## 6.  Conclusion.

For these reasons, Plaintiffs request the Court deny the Motion to Compel Arbitration as to Shropshire, Brister, and Garrett.

Respectfully submitted,

BRUCKNER BURCH PLLC

/s/ David I. Moulton

By: _____

David I. Moulton
Texas Bar No. 24051093
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:      (713) 877-8788
Telecopier:      (713) 877-8065
dmoulton@brucknerburch.com

### CERTIFICATE OF SERVICE

I served a copy of this document on all registered parties and/or their counsel of record, via the Court's ECF System on July 31, 2020.

/s/David I. Moulton

_____

David I. Moulton