# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| FLOYD SHROPSHIRE, individually and on behalf of all others similarly situated, <br><br> v. <br><br> CHENIERE ENERGY, INC and MIDSHIP PIPELINE CO., LLC. | **Case No.: 4:20-cv-1175** <br><br> Collective Action (29 U.S.C. § 216(b)) |

## PLAINTIFF'S RESPONSE TO CIS'S MOTION TO INTERVENE

Respectfully submitted,

**BRUCKNER BURCH PLLC**

**/s/ David I. Moulton**

By: _____

Richard J. (Rex) Burch
Texas Bar No. 24001807
David I. Moulton
Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
dmoulton@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**ATTORNEYS IN CHARGE FOR PLAINTIFFS**

## TABLE OF CONTENTS

1. SUMMARY. ...................................................................................................... 1

2. CIS CANNOT INTERVENE AS A MATTER OF RIGHT. ........................................... 2

    A.   CIS Does Not Have a Sufficient Interest in the Litigation. ....................... 2

        1)   CIS Can't Intervene Based on Claims that Don't Exist. ...................... 3

        2)   CIS Can't Add Claims to Shropshire's Complaint. ............................ 4

        3)   Shropshire Can Recover from Midship Alone. ................................... 4

        4)   CIS's Pay Practices Are Not at Issue. ................................................ 8

        5)   CIS'S Alleged Indemnity Obligations Do Not Give It a Direct Interest. ......................... 8

        6)   No Interest Exists in Arbitrating Claims Against Midship. ................. 10

    B.   Resolution of Shropshire's Claims Will Not Impair Any Alleged Interest. ............... 11

    C.   Any "Interest" is Adequately Represented by the Parties. ....................................... 12

3. PERMISSIVE INTERVENTION IS INAPPROPRIATE. ............................................... 15

4. CIS'S PROPOSED MOTION TO COMPEL ARBITRATION DOES NOT SATISFY RULE 24(C). ................................................................................................................ 18

5. CONCLUSION. .................................................................................................. 19

# TABLE OF AUTHORITIES

## Cases

*Adam Joseph Resources v. CNA Metals Ltd.*,
  919 F.3d 856 (5th Cir. 2019) ........................................................................................14

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ......................................................................................................16

*Blount-Hill v. Zelman*,
  636 F.3d 278 (6th Cir. 2011) ........................................................................................12

*Chao v. Barbeque Ventures, LLC*,
  547 F.3d 938 (8th Cir. 2008) ................................................................................4, 8, 15

*Chao v. Westside Drywall, Inc.*,
  709 F.Supp.2d 1037 (D. Or. 2010) .................................................................................5

*Clean Earth, Inc. v. Endurance Am. Ins.*,
  Civ. A. No. 15-6111 (FLW), 2016 WL 5422063 (D. N.J. Sept. 28, 2016) ...................11

*Columbian Fin. Corp. v. BancInsure, Inc.*,
  650 F.3d 1372 (10th Cir. 2011) ...................................................................................6, 7

*Curry v. M-I, LLC*,
  No. 2:18-CV-306, 2020 WL 486790 (S.D. Tex. Jan. 30, 2020)............................4, 8, 14, 16

*DeOtte v. Azar*,
  332 F.R.D. 173 (N.D. Tex. 2019) .............................................................................15, 16

*Diamond v. Charles*,
  476 U.S. 54 (1986) ........................................................................................................16

*Diomande v. Toyota Motor Mfg., Kentucky, Inc.*,
  No. 14-CV-171-JMH, 2015 WL 1468091 (E.D. Ky. Mar. 30, 2015)............................10

*DOH Oil Co. v. QEP Res., Inc.*,
  No. MO:18-CV-0152-DC-RCG, 2019 WL 3816290 (W.D. Tex. May 20, 2019) ............18

*Dowd v. Directv, LLC*,
  No. 14-cv-14018, 2016 WL 28866 (E.D. Mich. Jan. 4, 2016) ........................................5

*DSMC, Inc. v. Convera Corp.*,
  273 F.Supp.2d 14 (D.D.C. 2002) ..................................................................................16

*Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*,
  817 F.3d 198 (5th Cir. 2016) ........................................................................................12

*Flynn v. Sanchez Oil & Gas Corp.*,
  2019 WL 6606530 (W.D. Tex. Dec. 5, 2019) *adopted*, 2020 WL 1083825 (W.D.Tex. Mar. 6,
  2020)..........................................................................................................................passim

*Gen. Land Office of Texas v. United States Fish & Wildlife Serv.*, No. A-17-CA-538-SS,
  2017 WL 10741921 (W.D. Tex. Nov. 30, 2017).............................................................12

*Hebert v. Marathon Oil Co.*,
  No. CV H-20-998, 2020 WL 1659885 (S.D. Tex. Mar. 30, 2020) ..................................4

*Hiser v. NZone Guidance, L.L.C.*,
  799 Fed. App'x 247 (5th Cir. 2020) ..........................................................................7, 12

*In re SBMC Healthcare, LLC*,
  519 B.R. 172 (S.D. Tex. 2014) ......................................................................................18

*Itzep v. Target Corp.*,
  543 F.Supp.2d 646 (W.D. Tex. 2008) .............................................................................4

*Izzio v. Century Partners Golf Mgmt., L.P.*,
No. 3:14-CV-03194-P, 2015 WL 5472845 (N.D. Tex. Sept. 15, 2015)...................................... 13, 14

*J.T. Shannon Lumber Co. v. Gilco Lumber, Inc.*, No. CIV. A. 2:07-CV-119,
2008 WL 4553048 (N.D. Miss. Oct. 7, 2008) ............................................................................9

*Janvey v. Hamric*,
No. 3:13-CV-0775-N, 2015 WL 11120300 (N.D. Tex. Aug. 11, 2015) .......................................9

*Joaquin v. Coliseum, Inc.*,
A-15-CV-787-LY, 2016 WL 3906820 (W.D. Tex. July 13, 2016) ..................................... 1, 6, 7

*Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*,
60 F.3d 1304 (8th Cir. 1995) .................................................................................................6

*Koon v. United States*,
518 U.S. 81 (1996) ...............................................................................................................12

*Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*,
478 U.S. 501 (1986) .............................................................................................................14

*Lundine v. Gates Corp.*,
No. 18-1235-EFM, 2020 WL 1862578 (D. Kan. Apr. 14, 2020) ..................................... 4, 5, 6

*Marquez v. El Portal, Inc.*,
No. 5:13-CV-01395-JHE, 2017 WL 3224475 (N.D. Ala. Jan. 12, 2017) ..................................6

*Martin v. Wilks*,
490 U.S. 755 (1989) ...............................................................................................................8

*McNutt v. Dillards, Inc.*,
No. EP-18-CV-40-PRM, 2018 WL 7132549 (W.D. Tex. Apr. 30, 2018) ..................................5

*Moreno v. EDCare Mgmt., Inc.*,
243 F.R.D. 258 (W.D. Tex. 2007) ..........................................................................................5

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984) .......................................................................................... 2, 3, 15

*Orozco v. Plackis*,
757 F.3d 445 (5th Cir. 2014) .................................................................................................4

*Parrish v. Premier Directional Drilling, L.P.*,
917 F.3d 369 (5th Cir. 2019) ......................................................................................... 1, 3, 4

*Pin v. Texaco, Inc.*,
793 F.2d 1448 (5th Cir. 1986) ..............................................................................................18

*Robertson v. Enbridge (US) Inc.*,
2020 WL 2105064 (W.D. Pa. Apr. 13, 2020), *adopted*, 2020 WL 2104911 (W.D. Pa. May
1, 2020) ...............................................................................................................................7

*Romero v. Clean Harbors Surface Rentals USA, Inc.*,
368 F.Supp.3d 152 (D. Mass. 2019) ................................................................................... 4, 5

*Ross v. Marshall*,
426 F.3d 745 (5th Cir. 2005) .................................................................................................2

*Ross v. Marshall*,
456 F.3d 442 (5th Cir. 2006) .................................................................................................9

*San Juan County v. United States,* 503,
F.3d 1163 (10th Cir. 2007) ...................................................................................................15

*Shoals v. Owens & Minor Distribution, Inc.*,
No. 2:18-CV-2355 WBS EFB, 2018 WL 5761764 (E.D. Cal. Oct. 31, 2018) ...........................10

*Sierra Club v. Espy*,
18 F.3d 1202 (5th Cir. 1994) .................................................................................................8

*Stewart v. City of Houston*,
    2009 WL 783319 (S.D. Tex. Mar. 24, 2009) ........................................................11
*Taylor v Sturgell*,
    553 U.S. 880 (2008) ...............................................................................................6
*Team Worldwide Corp. v. Wal-Mart Stores, Inc.*,
    No. 2:17-CV-00235-JRG, 2017 WL 6059303 (E.D. Tex. Dec. 7, 2017) ...............9
*Temple v. Synthes Corp.*,
    498 U.S. 5 (1990) ...........................................................................................5, 6, 7
*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ............................................................................2, 12
*Texas v. United States*,
    No. 4:18-CV-00167-O, 2018 WL 4076510 (N.D. Tex. June 15, 2018)...............12
*U.S. Equal Employment Opportunity Comm'n v. JC Wings Enterprises, L.L.C.*,
    784 Fed. App'x 883 (5th Cir. 2019) ......................................................................2
*Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
    834 F.3d 562 (5th Cir. 2016) ..................................................................................9

## Statutes

29 U.S.C.A. § 216(b) ......................................................................................................3

## Rules

Fed. R. Civ. P. 24(a) ....................................................................................................2
Fed. R. Civ. P. 24(a)(2) ......................................................................................passim

1. **SUMMARY.**

Cleveland Integrity Services, Inc. (CIS) wants to intervene to help its clients, Cheniere Energy, Inc. and Midship Pipeline Company, LLC (collectively, Midship)[1] argue Floyd Shropshire must arbitrate his claims against Midship based on an agreement between Shropshire and CIS. CIS ignores multiple decisions, from Texas courts, holding nearly identical arbitration agreements do not apply to FLSA claims made against clients like Midship. *See, e.g., Flynn v. Sanchez Oil & Gas Corp.*, No. SA-19-CV-00867-JKP, 2019 WL 6606530, at *2 n.1 (W.D. Tex. Dec. 5, 2019) *adopted*, 2020 WL 1083825, at *3 (W.D. Tex. Mar. 6, 2020); *Newman v. Plains All American Pipeline, L.P.*, No. 7:19-cv-0244-DC-RCG, Dkt. 28 (W.D. Tex. May 12, 2020). CIS also flatly misstates Shropshire's claims. Shropshire does not allege claims against CIS or contend CIS is a joint employer with Midship. ECF. 5. CIS's claim it could be liable as a joint employer is a nonstarter. "[A] party must **plead** at least an employment relationship with each employer **before** the issue of joint employment may be determined." *Joaquin v. Coliseum, Inc.*, A-15-CV-787-LY, 2016 WL 3906820, at *3 (W.D. Tex. July 13, 2016), *approved sub nom.* at 2016 WL 7647630 (W.D. Tex. Aug. 2, 2016) (emphasis added).

Even if CIS also employed (or jointly employed) Shropshire, the FLSA gives Shropshire the right to pursue claims against any of his employers, separately or in combination. *Flynn*, 2019 WL 6606530, at *2 n.1 ("there is nothing in the FLSA that prevents an employee from suing multiple entities or individuals as its joint employers, in the same lawsuit or in two separate lawsuits"). Shropshire's claims against Midship will be determined by the economic realities of their relationship, not by any contractual agreement between Shropshire and CIS. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379, 388 (5th Cir. 2019). The current parties are best suited to

---

[1] Cheniere Energy, Inc. is a liquified natural gas producer. Midship Pipeline Company, LLC, its subsidiary, is a natural gas pipeline construction company.

resolve these issues. Allowing CIS to intervene where it can have no liability, and its agreements do not apply, will merely delay and prejudice Shropshire's claims against Midship.

## 2. CIS CANNOT INTERVENE AS A MATTER OF RIGHT.

To intervene as of right, the movant must establish: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. FED. R. CIV. P. 24(a)(2); *see Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015). "The potential intervenor must satisfy all four requirements to intervene as of right." *U.S. Equal Employment Opportunity Comm'n v. JC Wings Enterprises, L.L.C.*, 784 Fed. App'x 883, 887 (5th Cir. 2019). CIS cannot meet this test.

### A. CIS Does Not Have a Sufficient Interest in the Litigation.

CIS must show a direct, substantial, and legally protectable interest in the property or transaction that is the subject of the action. FED. R. CIV. P. 24(a); *Ross v. Marshall*, 426 F.3d 745, 757 (5th Cir. 2005). "This requires … more than a mere economic interest; rather, the interest must be 'one which the *substantive law* recognizes as belonging to or being owned by the applicant.'" *Ross*, 426 F.3d at 757 (emphasis in original). If the interest is contingent on the outcome of a later case, it is not "direct" and is inadequate to establish intervention as a matter of right. *Id.*

CIS's claimed "interests" are that: (1) it could be liable as a joint employer; (2) its "employment practices" are at issue in this case; and (3) Midship has demanded indemnification. ECF. 16 at 7-8. None of these are a "direct, substantial, legally protectable" interest. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984). Shropshire's complaint seeks to hold Midship liable for its FLSA violations—not for CIS's violations. *See* ECF 5. Shropshire's agreement to arbitrate claims against CIS is simply not triggered. *See* ECF 13-1 (covering claims between "the Company" [CIS] and "the Employee" [Shropshire]. *See* ECF 13-1.).

Only Midship's actions are at issue, and its FLSA liability exists regardless of CIS's (real or imagined) status as Shropshire's employer or joint employer. *See* ECF 5.

Moreover, any "interest" based on arbitration's alleged "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes," is immaterial. *See* ECF 16 at 8. No claims are asserted against CIS. ECF 5. Its only costs are the self-imposed costs of attempting to intervene. Moreover, while CIS contends Midship demanded indemnity, it does not claim it accepted this demand. ECF 16 at 8. CIS does not establish any direct liability exists from this suit such that it has any "interest" in Midship's litigation costs. Again, CIS created the arbitration agreement Shropshire signed. CIS could have "bargained for" (that is, written) its agreement to cover Midship (as it did with Danny Day's arbitration agreement). But it didn't. CIS cannot ask the Court to rewrite its contract to achieve a result it failed to achieve at the bargaining table.

### 1)   CIS Can't Intervene Based on Claims that Don't Exist.

In seeking to intervene based on alleged "joint employer" liability, CIS asks this Court to redraft Shropshire's Complaint. *See* ECF 16. CIS wants Shropshire's claims against Midship to be subject to his arbitration agreement with CIS. *Id.* at 8 (CIS "has a distinct interest in enforcing [Shropshire's] arbitration agreement[]"). But that agreement applies only to disputes between CIS and Shropshire and CIS admits Shropshire alleges no claims against it. So CIS argues Shropshire can only hold Midship liable if he can show Midship was a joint employer along with CIS. *Id.* This is simply incorrect.

Under the FLSA, "[a]ny employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their … unpaid overtime compensation … and in an additional amount as liquidated damages." 29 U.S.C.A. § 216(b). Status as an "employee" turns on "whether the alleged employees, as a matter of 'economic reality,' are 'economically dependent' on the business to which they supply their labor and services." *Parrish*, 917 F.3d at 379. Courts do "not to rely on any

contractual agreement." *Id.* at 388. This Court must look at Midship's relationship with Shropshire to determine if it was his employer. *Id.*

"The FLSA … contemplates the possibility of multiple employers[,]" that is, that a "single individual may be the employee of two or more employers at the same time." *Itzep v. Target Corp.*, 543 F.Supp.2d 646, 652 (W.D. Tex. 2008). Employers who are found to be joint employers under the FLSA are responsible for their own FLSA violations **plus** the violations of the other joint employer(s). "In joint employer contexts, each employer must meet the economic reality test." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014); *Romero v. Clean Harbors Surface Rentals USA, Inc.*, 368 F.Supp.3d 152, 159 (D. Mass. 2019) ("the employment relationship test [under the FLSA] is the same whether there is one putative employer or multiple. Crucially, the test is applied to each putative employer individually"). All employers, joint or otherwise, have an independent duty of FLSA compliance that cannot be delegated to any third-party. *Curry v. M-I, LLC*, No. 2:18-CV-306, 2020 WL 486790, at *1 (S.D. Tex. Jan. 30, 2020) (finding FLSA compliance was "nondelegable"); *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942-43 (8th Cir. 2008) (same).

### 2)  CIS Can't Add Claims to Shropshire's Complaint.

CIS admits Shropshire brings no claims against it. ECF 16. Instead, it argues Shropshire's claims against Midship imply CIS is jointly liable for Midship's FLSA violations. *Id.* at 7. But joint employer liability must be raised by actual allegations in a complaint. *Hebert v. Marathon Oil Co.*, No. CV H-20-998, 2020 WL 1659885, at *4 (S.D. Tex. Mar. 30, 2020) ("A plaintiff must allege facts that would allow a court to apply the economic reality factors on a defendant-by-defendant basis and determine that each defendant jointly employed the plaintiff."). And there are none here. ECF 5.

### 3)  Shropshire Can Recover from Midship Alone.

CIS also contends Shropshire must plead and prove CIS's joint liability to prevail against Midship. Its sole support is *Lundine v. Gates Corp.*, No. 18-1235-EFM, 2020 WL 1862578 (D. Kan.

Apr. 14, 2020). ECF 16 at 4. But *Lundine* supports Shropshire's position. There, the defendant moved to strike an opt-in plaintiff it claimed did not meet the class definition because she was "hired through a staffing company." 2020 WL 1862578 at *1. Applying the economic realities test, the court found the opt-in did not qualify as the defendant's employee "for purposes of [that] FLSA collective action." *Id.* at *3. The Court did not then determine whether the staffing company was "really" the employer, it simply dismissed the plaintiff. This is precisely what would happen here if Midship shows it did not employ Shropshire as a matter of economic reality.

CIS suggests the Court should inquire into whether it is an employer, but offers no authority showing this Court should (or even could) determine a nonparty was really Shropshire's employer. Because none exists. An FLSA plaintiff can pursue claims against one employer, regardless of whether a joint employer exists. *See Flynn*, 2019 WL 6606530, at *2 n.1 ("nothing in the FLSA … prevents an employee from suing multiple entities or individuals as its joint employers, in the same lawsuit or in two separate lawsuits"); *Romero*, 368 F.Supp.3d at 160 (same); *Chao v. Westside Drywall, Inc.*, 709 F.Supp.2d 1037, 1062 (D. Or. 2010) (same); *Dowd v. Directv, LLC*, No. 14-cv-14018, 2016 WL 28866, at *4 (E.D. Mich. Jan. 4, 2016) ("there is nothing in the multifactor tests for either employment or joint employment that requires a plaintiff to establish that he is an FLSA 'employee' of each and every entity above him.").

As the "master of his complaint," Shropshire can decide what claims and parties to pursue. *Moreno v. EDCare Mgmt., Inc.*, 243 F.R.D. 258, 260 (W.D. Tex. 2007); *McNutt v. Dillards, Inc.*, No. EP-18-CV-40-PRM, 2018 WL 7132549, at *2 (W.D. Tex. Apr. 30, 2018) (a plaintiff is "permitted to omit any causes of action he so chooses and plead only specific, limited claims"). "It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit." *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Shropshire seeks to hold Midship liable for its own

violations of the FLSA. *See* ECF 5. He does not seek to hold Midship liable for any other entity's actions. *Id.*

"Even if [CIS] is an employer under the FLSA, Plaintiffs need not bring such a claim against [it]. If [CIS] is liable for the FLSA violations and [Midship] is not, it is Plaintiffs' prerogative to risk recovering from neither over attempting to recover from [Midship]." *Marquez v. El Portal, Inc.*, No. 5:13-CV-01395-JHE, 2017 WL 3224475, at \*13 (N.D. Ala. Jan. 12, 2017) *adopted in part*, No. 5:13-CV-01395-MHH, 2017 WL 3218079 (N.D. Ala. July 28, 2017). If Shropshire fails to carry his burden, Midship will not be liable and the inquiry ends. The Court will not then decide who **could have been** Shropshire's employer. *Lundine*, 2020 WL 1862578 at \*3. Indeed, this determination cannot be made because Shropshire does not allege a joint employer relationship. *Joaquin*, 2016 WL 3906820, at \*3. CIS cannot justify intervention based on non-existent allegations. *See* ECF 16.[2] Any determination of CIS's liability must await claims brought **against CIS**. Otherwise, it would be an impermissible advisory opinion. *See Taylor v. Sturgell*, 553 U.S. 880, 892-93, 898 (2008); *Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1379 (10th Cir. 2011).

Ignoring binding and persuasive authority, CIS cites two out-of-circuit, unpublished cases. Respectfully, these orders lack support and are factually distinguishable. In *Snow v. Silver Creek*

---

[2] CIS relies on *Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1309 (8th Cir. 1995) to suggest its alleged status as Shropshire's joint employer (again, something CIS, not Shropshire, alleged) is enough to support intervention. ECF 16 at 8. There, the plaintiff filed multiple suits (one in federal court against Reimer & Kroger and a second in state court against intervenor Blackwell Sanders). The plaintiff's state court pleading specifically alleged the intervenor was jointly and severally liable along with the named defendants in the federal case. Because the subject matter of the two separate lawsuits was identical and the plaintiff clearly sought to hold the state court defendant jointly and severally liable with the federal defendant, the court permitted intervention in the federal lawsuit. Here, there is no second action against CIS, Shropshire asserts no claims against CIS, and Shropshire does not allege Midship and CIS are jointly and severally liable for damages under the FLSA. *See* ECF 5.

*Midstream Holdings, LLC*, No. 19-CV-241-ABJ (D. Wyo. Mar. 3, 2020), the magistrate noted the plaintiff asserted no claims against the proposed intervenor, but nevertheless allowed CIS to intervene based on his belief it "could potentially be found to be a joint employer." *Id.* at 6-7. The court failed to explain how this could happen and instead simply pointed to law stating parties may be jointly liable. *Id.* at 7. Recently, that Court explained it believed Snow's claims against Silver Creek to "arise[] out of his employment with CIS and fall[] under the arbitration agreement. *Id.* at ECF 45. The Fifth Circuit rejected this line of thinking. *See Hiser v. NZone Guidance, L.L.C.*, 799 Fed. App'x 247, 248 (5th Cir. 2020) (plaintiff's claims arise under the FLSA as opposed to their contract with the staffing company); *Flynn*, 2019 WL 6606530, at *6 (plaintiff's claims "are statutory and arise under the FLSA, a federal law, and not the contract"). Similarly, in *Robertson v. Enbridge (US) Inc.*, No. 2:19-CV-01080-LPL, 2020 WL 2105064, at *1 (W.D. Pa. Apr. 13, 2020), *adopted*, 2020 WL 2104911 (W.D. Pa. May 1, 2020) the magistrate found the proposed intervenors were, in fact, joint employers. She also ignored the presumption that the intervenor's interest was adequately represented and found a contingent possibility of indemnity sufficient. *Id.*

CIS's cases also conflict with in-Circuit authority holding "a party must plead at least an employment relationship with each employer before the issue of joint employment may be determined." *Joaquin*, 2016 WL 3906820, at *3. Moreover, CIS's decisions ignore the plaintiff's right to bring the claims he wants to bring against the parties he wants to sue, allowing nonparties with no possible direct liability to intervene. Nothing in Rule 24(a) allows potential defendants to intervene regardless of circumstances. CIS cannot intervene simply because it *might* be liable to Shropshire *if* he sued CIS. CIS is not bound by any judgment against Midship and has demonstrated no practical adverse effects arising directly out of such judgment. "Joinder as a party, rather than knowledge of a lawsuit and an opportunity to intervene, is the method by which potential parties are subjected to the jurisdiction of the court and bound by a judgment or decree. The parties to a lawsuit presumably

know better than anyone else the nature and scope of relief sought in the action, and at whose expense such relief might be granted." *Martin v. Wilks*, 490 U.S. 755, 765 (1989).

### 4) CIS's Pay Practices Are Not at Issue.

CIS claims it must intervene to "defend" its pay practices. ECF 16 at 4. But Midship's practices, not CIS's, are at issue here. As discussed above, Midship owes its workers an independent duty under the FLSA, a duty it cannot delegate to third parties. *Curry*, 2020 WL 486790, at *1; *Chao*, 547 F.3d at 942-43. Even if CIS decided Shropshire was exempt, this tells the Court nothing about Midship's employment practices. Did Midship make an independent inquiry as required? Did it simply adopt CIS's practices without verifying these practices were legal? This case turns on Midship's actions. The fact CIS's conduct may be relevant does not warrant its intervention, because the challenge is to Midship's employment practices. Moreover, CIS has not shown that Midship cannot defend its own practices. No finding concerning Midship's employment practices would directly impact CIS's practices. A judgment against Midship would not require CIS to do anything, let alone change its employment policies or pay workers more money than it believes they are owed. CIS's interest must "go[] beyond a generalized preference that the case come out a certain way." *Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). But it doesn't.

### 5) CIS'S Alleged Indemnity Obligations Do Not Give It a Direct Interest.

Finally, CIS suggests it has an interest because Midship made a demand for indemnity. ECF 16 at 8. CIS does not identify the basis for indemnity or attach any contract containing an indemnity provision. Moreover, there is no evidence CIS accepted indemnity. *Id.* CIS contends it has an interest simply because (it says) Midship made a demand (which may or may not have any basis). *Id.* It says, but does not show, this indemnity demand creates an economic interest in Shropshire's case against Midship. *Id.*

8

But "an economic interest is not sufficiently direct when the intervenor's interest will only be vindicated by a separate legal action or…when the intervenor's relationship is too removed from the dispute." *Wal–Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 568 (5th Cir. 2016). "The interest required to intervene as of right is a 'direct' interest. By definition, **an interest is not direct when it is contingent on the outcome of a subsequent lawsuit.**" *Ross v. Marshall*, 456 F.3d 442, 443 (5th Cir. 2006) (emphasis added). And any alleged demand for indemnity does not give CIS a direct interest in this case. *See, e.g.*, *Janvey v. Hamric*, No. 3:13-CV-0775-N, 2015 WL 11120300, at *3 (N.D. Tex. Aug. 11, 2015) (finding no interest based on indemnity where no judgment had been rendered in the underlying action and therefore there were "still two contingencies separating [proposed intervenor] from liability on behalf of [defendant]: the [plaintiff] must win a judgment against [defendant] and [proposed intervenor] must lose their coverage dispute."); *J.T. Shannon Lumber Co. v. Gilco Lumber, Inc.*, No. CIV. A. 2:07-CV-119, 2008 WL 4553048, at *2 (N.D. Miss. Oct. 7, 2008) (same). Any determination of CIS's liability for indemnity necessarily requires a second lawsuit. *See id.* Even if an indemnity obligation exists, CIS can only be liable if: (1) Shropshire wins a judgment against Midship; and (2) Midship obtains a verdict against CIS requiring it to indemnify Midship for losses arising from Midship's employment practices. Two steps are too much.

CIS cites to *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, No. 2:17-CV-00235-JRG, 2017 WL 6059303, at *2 (E.D. Tex. Dec. 7, 2017) to show it has an interest in this litigation. This case is distinguishable. There, each of the proposed intervenors **accepted** the defendant's demand for indemnity. The intervenors liability was therefore not contingent on a second suit. *See id* at n.4. There is no such showing here. CIS says only that Midship has made a demand. Any obligation is thus still contingent. The possibility that CIS could be liable for indemnity does not justify intervention.

9

**6)  No Interest Exists in Arbitrating Claims Against Midship.**

CIS claims an interest in "enforcing" Shropshire's arbitration agreement. ECF 16 at 8. This argument fails. Shropshire never agreed to arbitrate with Midship. CIS contends "moving forward without [it] could result" in Shropshire being able to avoid the arbitration forum in which he committed to bring his individual employment claims. ECF 16 at 8. This argument presumes Shropshire agreed to arbitrate all employment claims he might have against anyone. But he didn't. Shropshire never entered into any written contract (much less an arbitration agreement) with Midship. Midship is not a party or signatory to Shropshire's agreement with CIS. While Shropshire and CIS agreed to arbitrate, they agreed to arbitrate disputes **between them**. The arbitration agreement **that CIS wrote** is explicit as to exactly who and what is covered. Texas courts have found, repeatedly, that nearly identical agreements do not apply to the signatories claims against third-parties. *See, e.g.*, *Flynn*, 2019 WL 6606530, at *4; *Newman v. Plains All American Pipeline, L.P.*, No. 7:19-cv-0244-DC-RCG, Dkt. 28 (W.D. Tex. May 12, 2020). CIS ignores these indistinguishable cases. Instead, it asks the Court to assume it justified intervention. Shropshire and CIS's agreement to arbitrate claims against each other cannot reasonably be read to require Shropshire to arbitrate his claims against "anyone."

This is particularly true given CIS's business. CIS knew it sent personnel to its customers, that the personnel might have claims against its customers, and could have covered its customers in its arbitration agreement expressly. *See, e.g., Flynn*, 2019 WL 6606530, at *5 ("Cypress-TIR, the drafter of the Employment Agreement, could have explicitly required its employees to arbitrate any claims against its customers but it did not do so—neither in the arbitration provision nor in the provision of the Employment Agreement that specifically addresses employee claims against Cypress-TIR's customers."); *Shoals v. Owens & Minor Distribution, Inc.*, No. 2:18-CV-2355 WBS EFB, 2018 WL 5761764, at *10 (E.D. Cal. Oct. 31, 2018); *Diomande v. Toyota Motor Mfg., Kentucky, Inc.*, No.

10

14-CV-171-JMH, 2015 WL 1468091, at *4 (E.D. Ky. Mar. 30, 2015). CIS offers nothing to show Shropshire agreed to arbitrate his claims against Midship or that it "bargained" with Shropshire for him to do so. CIS and Shropshire "bargained" to arbitrate disputes **between themselves**, not disputes with third parties like Midship. CIS cannot retroactively re-write its arbitration agreement with Shropshire to extend to its customers. And because Shropshire brings no claims against CIS, CIS has nothing to compel to arbitration.

### B. Resolution of Shropshire's Claims Will Not Impair Any Alleged Interest.

Rule 24(a) requires a potential intervenor to be "so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest." FED. R. CIV. P. 24. "'Impairment exists when the decision of a legal question ... would, as a practical matter, foreclose the rights of the proposed intervenor in a subsequent proceeding.'" *Stewart v. City of Houston*, 2009 WL 783319, at *1 (S.D. Tex. Mar. 24, 2009).

CIS contends denying intervention would impair **its ability to defend** against Shropshire's FLSA claims. ECF 16 at 8. No one asked CIS to defend any claims. There is no tangible threat because CIS is not a party, no claims have been made against it, and its liability cannot be adjudicated. CIS thus cannot be deprived of the opportunity to raise arguments and defenses before adjudication of its own liability. Moreover, any judgment obtained from Midship would not require CIS to do anything to its classification and compensation policies.[3] Shropshire's claims concern

---

[3] The only case CIS cites to show its interests would be impaired does not support its claim. ECF 16 at 9 (citing *Clean Earth, Inc. v. Endurance Am. Ins.*, Civ. A. No. 15-6111 (FLW), 2016 WL 5422063 (D. N.J. Sept. 28, 2016)). The *Clean Earth* plaintiff (a former subcontractor of the general contractor intervenor) named only the surety as a defendant in a lawsuit stemming from a contractual dispute between him and the intervenor. 2016 WL 5422063, at *1. The plaintiff expressly accused **the intervenor** of failing to pay over $1 million in invoices for work performed, causing plaintiff to file a claim on the payment bond with the surety defendant who, in turn, refused to pay the plaintiff under the bond. *Id.* at *1-2. The court found the intervenor's interest could be impaired if not allowed to intervene because "Plaintiff's claims against Endurance [the surety defendant] sound in breach of contract with Cleary [the intervenor] as the alleged breaching party[.]" *Id.* at *4.

Midship's FLSA violations, claims that are independent of the arbitration agreement. *Hiser*, 799 Fed. App'x at 248; *Flynn*, 2019 WL 6606530, at \*6. By failing to show it may be as a result of this action, CIS failed to show any "interest" will be impaired or impeded if it cannot intervene. If CIS feels the need to "defend" "its" classification policies, CIS can file an amicus brief. *See, e.g., Gen. Land Office of Texas v. United States Fish & Wildlife Serv.*, No. A-17-CA-538-SS, 2017 WL 10741921, at \*4 (W.D. Tex. Nov. 30, 2017) (denying intervention but noting the proposed intervenors could protect their interest by filing an amicus brief); *Texas v. United States*, No. 4:18-CV-00167-O, 2018 WL 4076510, at \*3 (N.D. Tex. June 15, 2018) (same); *see also Blount-Hill v. Zelman*, 636 F.3d 278 (6th Cir. 2011) (allowing the proposed intervenor to participate in the proceedings as *amici curiae* would adequately address their concerns).

### C. Any "Interest" is Adequately Represented by the Parties.

When "the would-be intervenor has the same ultimate objective as a party to the lawsuit" the intervenor's interested as presumed to be adequately represented. *Texas v. United States*, 805 F.3d 653, 661 (5th Cir. 2015). "If the 'same ultimate objective' presumption applies, 'the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption.'" *Id.* In this situation, the intervenor must prove the party's representation of his interests is inadequate. *Id.* The failure to presume adequate representation where applicable is an error of law and an abuse of discretion. *See Koon v. United States*, 518 U.S. 81, 100 (1996).

To overcome this presumption, the intervenor must "specif[y] the particular ways in which their interests diverge[d] from the [party's]" and then "identif[y] the particular way in which these divergent interests have impacted the litigation" *See Entergy Gulf States Louisiana, L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 204 (5th Cir. 2016); *Texas*, 805 F.3d at 663. "Mere tactical differences do not make inadequate the representation of those whose interests are identical.' Nor does '[a] difference

12

of opinion concerning litigation strategy or individual aspects of a remedy ... overcome the presumption of adequate representation. Indeed, 'representation is not inadequate simply because 'the applicant would insist on more elaborate ... pre-settlement procedures or press for more drastic relief, or where the applicant and the existing party have different views on the facts, the applicable law, or the likelihood of success of a particular litigation strategy.'" *Izzio v. Century Partners Golf Mgmt., L.P.*, No. 3:14-CV-03194-P, 2015 WL 5472845, at *3 (N.D. Tex. Sept. 15, 2015) (internal citations omitted).

CIS does not dispute it has the same ultimate objective as Midship: to show CIS (and not Midship) employed Shropshire and to send Shropshire's claims against Midship to arbitration. ECF 16. Because they share the same objectives, CIS needed to affirmatively demonstrate some adversity between it and Midship. It failed to do so. CIS cannot show any collusion between Shropshire and Midship or that Midship has failed (or will fail) to fulfill its duty to represent its shared interests with CIS thus far. And even if CIS and Midship may theoretically have different perspectives on the course of litigation or settlement (which CIS failed to show) that does not, in and of itself, establish inadequacy of representation. *Izzio*, 2015 WL 5472845, at *3.

CIS tries to thread the needle of showing Midship cannot adequately protect CIS's "interests" while simultaneously arguing the claims against Midship are subject arbitration. *See* ECF 16. But CIS had to show Midship's litigation **objectives** differed from CIS's or that Midship could not protect its interests. It failed to do so. The only distinction it offers is that CIS, and not Midship, contracted with Shropshire and cut his paychecks. This is not a difference in legal interests or

13

objectives.[4] CIS does not explain how these facts overcome the presumption that Midship can adequately represent itself against Shropshire's claims that Midship violated the FLSA.

Midship has already shown it is perfectly capable of protecting this interest by moving to compel Shropshire to arbitration. *See* ECF 13. Midship already attempted to protect this interest by moving to compel Shropshire to arbitrate pursuant to Shropshire's arbitration agreement with CIS. *Id.* That CIS's proposed motion to compel arbitration adopts Midship's arguments demonstrates the parties have same objective.[5]

CIS also suggests Midship cannot adequately represent CIS's interest because it lacks CIS's "superior understanding" of Shropshire's employment classification and its "greater access to relevant documents and individuals." ECF 16 at 10. This argument is belied by the fact that Midship was able to attach all of Shropshire's onboarding and payroll documents from CIS (ECF 13-1), in addition to sworn declarations from CIS management relevant to these claims (ECF 13-1). Midship already demonstrated an ability to obtain documents or testimony from CIS. CIS's contention that Midship lacks CIS's "superior understanding" of how CIS classified Shropshire also misses the mark. Midship had an independent duty to properly pay its workers. *See Curry,* 2020 WL 486790, at

---

[4] CIS's reliance on the conclusory holding in *Enbridge* is specious. ECF 16 at 5. The magistrate found Cypress and Enbridge interests were aligned, but held because Cypress cut the checks and had a contract was sufficient to show a divergence of interests. She failed to explain how these distinctions were a legal interest, why they overcame the presumption, or why Enbridge could not adequately represent Cypress. *Id.*

[5] CIS also claims Midship might "settle in a manner that disadvantages CIS," ECF 16 at 10, but it fails to explain how a settlement would create a disadvantage. *See Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("Of course, parties who choose to resolve litigation through settlement may not dispose of the claims of a third party, and *a fortiori* may not impose duties or obligations on a third party"). The sole case CIS cites involved a law firm's client settling directly with the defendant to avoid paying the firm's contingency fee. *Adam Joseph Resources v. CNA Metals Ltd.*, 919 F.3d 856, 868 (5th Cir. 2019). The disadvantage (and collusion) were clear. CIS's speculation about a hypothetical future settlement that it imagines could possibly produce some unspecified disadvantage in not enough to meet its burden.

*1; *Chao*, 547 F.3d at 942-43. Midship cannot simply delegate its FLSA compliance and payroll management to CIS. *Id.* Midship was obligated to possess, or at the very least have access to, information concerning Shropshire's classification. If Midship lacks such evidence, and indeed solely relied on CIS for its classification and payment decisions relating to Shropshire, this creates liability issues for Midship. But Midship's claim it did not employ Shropshire under the FLSA does not create liability for CIS.

CIS also fails to explain how it will protect any alleged interest if it intervenes. "One of the arts of litigation is keeping matters as simple as possible." *San Juan Cty., Utah v. United States*, 503 F.3d 1163, 1206 (10th Cir. 2007). CIS brings nothing to the table. It cannot defend its own liability, as none is at issue, and the parties are perfectly capable of representing their own interests.

### 3.   PERMISSIVE INTERVENTION IS INAPPROPRIATE.

For permissive intervention, CIS must show it: (1) has a conditional right to intervene by a federal statute; or (2) shares with the main action a claim or defense with a common question of law or fact. FED. R. CIV. P. 24(b). "In acting on a request for permissive intervention, it is proper to consider, among other things, 'whether the intervenors' interests are adequately represented by other parties' and whether they 'will significantly contribute to full development of the underlying factual issues in the suit." *New Orleans Pub. Serv.*, 732 F.2d at 472 (5th Cir. 1984). CIS attempts to identify common questions of law and fact to support permissive intervention. ECF 16 at 10. This is not the standard under Rule 24(b), which requires the movant to show it has "a claim or defense" with a common question of fact or law. FED. RULE CIV. P. 24(b). This omission is fatal to CIS's motion. *See DeOtte v. Azar*, 332 F.R.D. 173, 186 (N.D. Tex. 2019) ("While Nevada contends…that it shares a common question of law … this is not the equivalent of having 'a claim or defense' that shares with the main action 'a common question of law or fact,' as required by Rule 24(b).").

In *DeOtte*, the plaintiffs sued the Secretary of Health and Human Services, claiming the Affordable Care Act's contraceptive mandate violated the Religious Freedom Restoration Act (RFRA). Nevada moved to intervene, seeking a ruling the contraceptive mandate did not violate the RFRA. *Id.* at 179. The Court denied intervention because the alleged harm could not arise as a direct result of the injunction. *Id.* at 183-84. The Court also denied permissive intervention, finding:

> Nevada has no "claim" because it is not suing any of the litigants. And Nevada has no "defense" because it will not be required to do anything—nor will it be restrained from doing anything—by the relief that the plaintiffs are seeking against the federal government. *See* Caleb Nelson, Intervention, 106 Va. L. Rev. (forthcoming April 2020) ("[A] 'defense' is a particular type of legal argument that the targets of a claim assert to explain why the court should not grant relief against them.") … *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 n.18 (1997) ("The words 'claims or defenses' ... in the context of Rule 24(b)(2) governing permissive intervention—manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an actual or impending law suit." … Nevada does not "have" a claim or defense against any of the litigants, so it has no grounds for permissive intervention.

*Id.* at 186 (emphasis added); *see Diamond v. Charles*, 476 U.S. 54, 76 (1986) (O'Connor, J., concurring) ("The words 'claim or defense' manifestly refer to the kinds of claims or defenses that can be raised in courts of law as part of an **actual or impending law suit…**" (emphasis added)). CIS suffers from this same deficiency. CIS argues a common "issue" arises out of the enforcement of its

arbitration agreement, ECF 16 at 10, but does not explain how this creates either a claim or defense.[6]

CIS argues it has a defense in this case because it says it classified Shropshire. *Id.* at 10. Again, CIS's classification decisions are not at issue. Perhaps acknowledging this, CIS asserts only that these issues "cannot be resolved without addressing the actions of CIS …" *Id.* at 11. Not only does this ask the Court to assume Midship took no independent action to fulfill its duties under the FLSA, it also confuses a defense with factual relevancy. Evidence concerning CIS's actions may be offered, but this alone does not reflect a claim or defense or an interest sufficient to intervene. While some overlap may exist, the factual inquiry into whether CIS properly classified Shropshire is not identical to the question of whether Midship properly classified Shropshire. And evidence for the former is not necessarily relevant to the latter. Moreover, a finding that Shropshire was improperly classified as exempt by Midship would not bind CIS.

To the extent CIS relies once again on dicta from *Enbridge*, the court did not actually hold (or identify) any "claim or defense that shares with the main action a common question of law or fact" as required by Rule 24(b). FED. R. CIV. P. 24(b). Similarly, the suggestion in *Silver Creek* that having all the facts before the court "adds value" falls significantly short of finding a claim or defense exists.

---

[6] The sole case CIS relies on, *DSMC, Inc. v. Convera Corp.*, 273 F.Supp.2d 14 (D.D.C. 2002), does not support its claims that the enforcement of Shropshire's arbitration commitment "in and of itself warrants intervention." There, the plaintiff sued its competitor for conspiring with the plaintiff's customer to steal trade secrets. The plaintiff also proceeded to arbitration on identical claims against its customer. *Id.* Plaintiff's customer moved to intervene and to stay the lawsuit pending the outcome of the arbitration. *Id.* at 17-18. The court rejected the customer's argument that it could intervene as a matter of right based on arguments similar to those raised by CIS here. *Id.* at *25-26. While the court allowed permissive intervention, it did so because plaintiff's claims in the lawsuit overlapped with issues in the **already pending arbitration**. *Id.* at *27. Moreover, the plaintiff ultimately consented to the customer's intervention against its competitor. *Id.* Shropshire has not instituted a separate arbitration proceeding against CIS nor has he alleged CIS and Midship conspired to deprive him of his overtime wages. His statutory FLSA claims against Midship do not turn on the terms of any contract.

Midship's demonstrated ability to obtain aid and production from CIS adequately quiets any concerns about the lack of a complete record.

Finally, CIS fails to show intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). CIS states, in conclusory fashion, that "intervention at this early stage of the litigation does not unduly delay or prejudice the rights of Shropshire or Midship." ECF 16 at 7. This argument is entirely inadequate to demonstrate a lack of delay or prejudice and ignores the fact that intervention prejudices Shropshire's right (not to mention the rights of the potential class members) to proceed in this forum. CIS moves to intervene not because it thinks it might be liable here, but because it failed to provide Midship a right to utilize CIS's arbitration agreement. It asks the Court to rewrite both Shropshire's Complaint and its own contract with Shropshire to provide its customer a fix to its own mistake. Allowing CIS to intervene will only inconvenience and prejudice Shropshire's claims, confuse the fact finder, and hinder judicial economy.

### 4.   CIS'S PROPOSED MOTION TO COMPEL ARBITRATION DOES NOT SATISFY RULE 24(C).

Rule 24(c) requires a motion to intervene "be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). "Interpreting this rule, the Fifth Circuit has held that an intervenor must state a 'well-pleaded' claim." *In re SBMC Healthcare, LLC*, 519 B.R. 172, 185 (S.D. Tex. 2014), *aff'd*, No. AP 14-03126, 2017 WL 2062992 (S.D. Tex. May 11, 2017) (citing *Pin v. Texaco, Inc.*, 793 F.2d 1448, 1450 (5th Cir. 1986)). While some court favor "a permissive interpretation" of this rule, it is not superfluous. Rule 24(c) serves an important purpose, as the pleading aids the determination of the "claims or defenses" the proposed intervenor seeks to assert. *See DOH Oil Co. v. QEP Res., Inc.*, No. MO:18-CV-0152-DC-RCG, 2019 WL 3816290, at *5 (W.D. Tex. May 20, 2019). The absence of a pleading merely compounds the difficult in discerning whether CIS asserts any claims or defenses that overlap with claims before the Court. *Id.*

18

To satisfy this requirement, CIS attaches a proposed motion to compel Shropshire to arbitration. ECF 16-1. But CIS fails to show it has any standing to compel either Shropshire (or Midship) to arbitration, much less to act on Midship's behalf. CIS's attempt to enforce its "claim or defense" is moving to compel arbitration of Shropshire's claims against Midship – but Midship already did this. *See* ECF 13. This shows a shared "ultimate objective" and adequate representation of CIS's "interest" by Midship. It also emphasizes the goal of CIS's intervention is only to assist Midship in compelling arbitration, not to protect CIS from "joint liability" or to defend its "employment practices." The Rule 24(c) motion unveils CIS's true goal. CIS does not actually want a seat at the table. It wants to help Midship run from the holdings in *Flynn* and *Plains*.

## 5. CONCLUSION.

For these reasons, the Court should deny CIS's Motion to Intervene.

Respectfully submitted,

**BRUCKNER BURCH PLLC**

**/s/ David I. Moulton**
By: _____
        David I. Moulton
        Texas Bar No. 24051093
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone:      (713) 877-8788
Telecopier:      (713) 877-8065
dmoulton@brucknerburch.com

## CERTIFICATE OF SERVICE

I served this document on all registered parties and/or their counsel of record, via the Court's ECF System on July 31, 2020.

**/s/David I. Moulton**
_____
David I. Moulton