**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| FLOYD SHROPSHIRE, individually and on behalf of all others similarly situated,<br>　　　　　　*Plaintiff*,<br><br>　　v.<br><br>CHENIERE ENERGY, INC. and MIDSHIP PIPELINE COMPANY, LLC.<br>　　　　　　*Defendant*. | Civil Action No. 4:20-cv-01175<br><br>Judge Alfred H. Bennett |

## CLEVELAND INTEGRITY SERVICES, LLC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO INTERVENE

Floyd Shropshire and his opt-ins (collectively, "Shropshire") accept that Cleveland Integrity Services, Inc. ("CIS") was their employer. Shropshire further accepts that it is the joint employment doctrine that enables this lawsuit against CIS's customers, Cheniere Energy, Inc. and Midship Pipeline Co. LLC (collectively, "Midship"): "[e]ven if CIS also employed (or jointly employed) Shropshire, the FLSA gave Shropshire the right to pursue claims against any of his employers, separately or in combination." (Dkt. 21 at 1.)

Yet, Shropshire asserts that this is not a joint employment case. Not so. If Midship exercised sufficient control over Shropshire's employment to qualify as his employer (as Shropshire repeatedly asserts), then it follows that Midship would be a joint employer. This is so because the record evidence confirms that CIS employed Shropshire during the same period of time. Shropshire's case is inescapably a joint employment case: "[a]lthough Plaintiffs bobbed and weaved around it in their Complaint, their *sub silentio* employment relationship (if any) with Defendant did not exist independent of their overt and documented employment relationship with Kestrel [a pipeline inspection company]." *Bock v. Salt Creek Midstream LLC*, No. 2:19-cv-01163-WJ-GJF, 2020 WL 3989646, at *4 (D.N.M. July 15, 2020) (granting intervention in identical case).

Where the joint employment doctrine allows Shropshire to sue CIS's customer (Midship),

1

the **joint employment** doctrine equally allows CIS (his undisputed employer) to intervene. This straightforward proposition is reconfirmed by the recent report and recommendations in *Bock* and in *Page v. DTE Midstream*, No. 2:19-cv-01345, Dkt. 65 (W.D. Pa. July 10, 2020) (Exhibit 1).

Shropshire's Opposition cannot counter or distinguish this growing body of case law requiring intervention in the exact same situation: an FLSA lawsuit not against the inspection company that employed the named plaintiff but against that company's customer.

*First*, Shropshire argues erroneously that CIS cannot intervene because he does not seek to hold CIS liable in this action. Shropshire simply misconstrues the nature of intervention under Federal Rule of Civil Procedure 24. These misconceptions can be disposed of as easily as **A-B-C**.

**A.** Shropshire wishes to transform Rule 24(a)'s "interest" requirement into a "liability" requirement. But, as *Bock* observes, *res judicata* is not the standard for intervention. 2020 WL 3989646, at *5 n.7. It does not matter that no claims are pleaded against CIS. *Altenhofen v. Southern Star Central Gas Pipeline, Inc.*, No. 4:20CV-00030-JHM, 2020 WL 3547947, at *3 (W.D. Ky. June 30, 2020) (rejecting the argument "that CIS does not have a sufficient interest in the underlying litigation because Altenhofen seeks to only hold Southern Star liable for Southern Star's violations of the FLSA, not those of CIS"). Put simply, Shropshire's suggestion -- that a motion to intervene is unnecessary unless a plaintiff has already pleaded a claim against the intervenor -- would repeal Rule 24, which focuses on "interests" rather than "claims" or even "liability." *See, e.g.*, *Stallworth v. Monsanto*, 558 F.2d 257, 265 (5th Cir. 1977) (explaining that Rule 24 protects "non-parties from having their interests adversely affected by litigation").

Plus, the fact that Shropshire does not seek to hold CIS liable in this action does not preclude him from bringing a claim against CIS challenging the same pay practices (for this assignment or another) and relying on a judgment here as either dispositive or, at least, persuasive. Nor does it

foreclose the possibility that, if Midship is unable to satisfy a judgment, Shropshire will seek to collect from CIS. *Cf. Blundell v. Home Quality Care Home Health Care, Inc.*, No. 3:17-cv-1990-L-BN, 2017 WL 5889715, at *3-4, 6 (N.D. Tex. Nov. 29, 2017) (acknowledging that "[i]t is possible that a judgment under the FLSA against the [non-bankrupt joint employers] . . . would affect, and perhaps could be held binding on, the debtor [bankrupt joint employer's] estate").

**B.** Shropshire compounds his error by pointing to decisions asking whether a joint employer is a necessary party under Rule 19. But, as *Altenhofen* recognizes, "[w]hether [CIS] constitutes a necessary party under Rule 19(a) is not determinative of its right to intervene under Rule 24(a)" because "[h]ere, the question is not whether the action itself could proceed without a necessary party but instead whether the intervening employer's *interest may be affected by the disposition* of the action." *Altenhofen*, 2020 WL 3547947, at *5 (internal quotation marks and citation omitted) (emphasis added); *see also Page*, Ex. 1, at 10-11. Each Rule serves a different purpose; the various Rule 19 decisions that Shropshire puts forth are wholly inapplicable here.

**C.** Contrary to Shropshire's imagining, CIS's pay practices are at issue. Shropshire recognizes that his theory of liability against Midship is derivative and requires proving an FLSA flaw in CIS's pay practices: *i.e.*, he believes the factfinder must ask "[d]id Midship simply adopt CIS's practices without verifying those practices were legal?" (Dkt. 21 at 8.) Since it is undisputed that CIS paid Shropshire and classified his job as overtime exempt under the FLSA, Shropshire must first show CIS violated the FLSA in order to blame Midship. *Bock* confirms: "Plaintiffs' criticism about what they were -- and were not -- paid is a criticism of the pay structure imposed upon them by [intervenor]" and thus "Plaintiffs' contentions about whether they were 'exempt' or 'non-exempt' under the wage-and-hour laws relate just as much if not more to [intervenor]'s personnel management structure as to Defendants." 2020 WL 3989646, at *4.

Even Shropshire's own cases prove that CIS's practices are at issue. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 942-43 (8th Cir. 2008), considered whether imposition of *liquidated damages* by pointing the finger to the company that computed or paid payroll. That, however, means that the liability issue (which must precede liquidated damages under the FLSA) is necessarily "whether CIS complied with the FLSA" in classifying Shropshire as overtime exempt.

*Second*, Shropshire puts the arbitrability cart before the intervention horse in arguing that CIS's arbitration agreement may not cover his claim against Midship. *Altenhofen* and *Bock* both rightly recognized that the mere potential that Shropshire's arbitration agreement might cover his claims warrants intervention: "[a]s a signatory to that AA [Arbitration Agreement] -- indeed, as its sole drafter -- [intervenor] has an interest in pursuing what it views as the benefit of its bargain" because "[d]enying [intervenor] the ability to intervene and -- *at the very least* -- *make the argument* that its AA be honored by its former employee is a result Rule 24(a) is designed to prevent." *Bock*, 2020 WL 3989646, at *4 (emphasis added). Here, as there, it is enough that CIS has a distinctive right as a **signatory** to seek to enforce that agreement in a future motion. *Altenhofen*, 2020 WL 3547947, at *4, 6 (differentiating between a non-signatory and signatory).

*Third*, Shropshire misunderstands why Midship's indemnity demand establishes an independent interest in intervention. *Altenhofen* and *Bock* each confirm that, as a practical matter, the "very real *possibility* of having to indemnify Defendant for its defense costs and the judgment" also entitles CIS to intervene. *Bock*, 2020 WL 3989646, at *4 (emphasis added); *see also Altenhofen*, 2020 WL 3547947, at *4. Shropshire relies on inapposite cases where the intervenors were insurance companies who sought to intervene in order to inject issues of their own coverage obligations. *Janvey v. Hamric*, No. 3:13-CV-0775-N, 2015 WL 11120300, at *3 (N.D. Tex. Aug. 11, 2015) (intervenor wished to stay action pending resolution of coverage dispute); *J.T. Shannon*

*Lumber Co. v. Gilco Lumber, Inc.*, No. CIV A. 2:07-CV-119, 2018 WL 4553048, at *2 (N.D. Miss. Oct. 7, 2008) (intervenor wished to ask special interrogatories to determine coverage). Unlike those insurance companies, CIS does not ask to resolve its contractual obligations with Midship.

*Fourth,* Shropshire's assertion that intervention is unnecessary because Midship should protect CIS is meritless. *Altenhofen* details why CIS has distinct and unique interests that the named defendant cannot be relied upon to protect. 2020 WL 3547947, at *6. Indeed, CIS meets Shropshire's own standard that there is inadequacy where the defendant "has failed (or will fail) to fulfill its duty to represent its shared interests." (Dkt. 21 at 13.) If, as Shropshire argues in Opposition to Midship's Motion to Compel (Dkt. 20), Midship cannot enforce his arbitration agreement as **non-signatory** to that agreement, then it is undeniable that CIS -- the admitted **signatory** -- must participate to protect its interests in enforcing that agreement as a *signatory*.

*Finally*, Shropshire's assertion that intervention under Rule 24(b) is not possible because there is no claim against CIS was explicitly rejected in *Bock*. 2020 WL 3989646, at *6. Further, unlike Shropshire's cases, there is no lack of standing here; CIS is aggrieved by Shropshire's attempt to circumvent his arbitration agreement and, thus, has standing under the Federal Arbitration Act. *See* 9 U.S.C. § 4. And, his suggestion sans authority that Rule 24(c) is not satisfied is equally frivolous. *See Robertson*, No. 2:19-cv-01080, Dkt. 116 (W.D. Pa. May 11, 2020).

Date: August 7, 2020

Respectfully submitted,

Cleveland Integrity Services, Inc.

/s/ Nicole Figueroa

| | |
|---|---|
| Nicole Figueroa | Rachel B. Cowen, *pro hac vice forthcoming* |
| McDermott Will & Emery LLP | McDermott Will & Emery LLP |
| 2501 N. Harwood Street | 444 West Lake Street |
| Dallas, Texas 75201 | Chicago, Illinois 60606 |
| (214) 295-8062 (phone) | (312) 372-2000 (phone) |
| (972) 767-0190 (fax) | (312) 884-7700 (fax) |
| nfigueroa@mwe.com | rcowen@mwe.com |

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned does certify that on the 7th day of August 2020, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the applicable ECF registrants.

<u>/s/ Nicole Figueroa</u>

Nicole Figueroa